No. 07-0953

**IN RE FORD MOTOR COMPANY**
**SPEED CONTROL DEACTIVATION SWITCH LITIGATION**

=========================================================================
**ON REVIEW BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**
=========================================================================

JUSTICE LANG delivered the opinion of the Multidistrict Litigation Panel.

Before this Multidistrict Litigation Panel is Ford Motor Co.'s motion to transfer, requesting the transfer of seventy-seven pending cases in twenty-eight counties to a pretrial judge for consolidated and coordinated pretrial proceedings. For the following reasons, Ford's motion to transfer is granted.

## I.  FACTUAL CONTEXT AND CONTENTIONS

On November 14, 2007, Ford filed its motion to transfer before this panel.[1] Tracking the language of Texas Rule of Judicial Administration 13.3(a)(2), Ford alleges that seventy-seven cases pending against it in twenty-eight different counties involve common issues of fact and the transfer of those cases for consolidated or coordinated pretrial proceedings would be for the convenience of the parties and witnesses, and would promote the just and efficient conduct of the cases. *See* TEX. R. JUD. ADMIN. 13.3(a)(2).

Ford contends all of the seventy-seven cases involve Ford's speed control deactivation switches (switch(es)) in various motor vehicles. The switches are alleged to be defective and allegedly caused the specific fire and attendant damages in each case. Ford asserts each case shares "common questions of fact in that they are all premised on the same alleged defect." According to

Ford, each case seeks to determine whether the "cause and origin of the vehicle fires was at the [switches] and the extent of damage caused by the fire." Ford lists several factual questions, which it says will "overlap" in the cases. These questions concern the design, manufacture, testing, installation, advertising, and performance of the switches. Additionally, Ford says plaintiffs "are likely to seek information concerning the timing and motivation behind Ford's 05S28 recall [of the switches]." Ford asserts its position will be "identical" as to all of "these underlying causation issues." Finally, Ford advises us that the Federal Judicial Panel on Multidistrict Litigation has determined that "more than 50" cases in federal court involving the switches are appropriate for consolidation and has transferred them to the United States District Court for the Eastern District of Michigan. *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 398 F. Supp. 2d 1365 (J.P.M.L. 2005).

Plaintiffs generally oppose the transfer of the cases, arguing there is no common issue of fact in the cases.[2] Rather, there is only "a common ultimate question: whether a defect present in the [switches] of the specific Ford vehicle at issue caused the specific fire and damages being complained of in each separate action." Plaintiffs assert that the switches "are defective and . . . fail in exactly the same manner." Further, they argue many issues exist which are "peculiar and unique to each case," including maintenance, repair history, after-market add-ons, warranty considerations, and other potential causes for the fire and damages, and make consolidation improper. They argue generally that "[t]he issues in each of these cases have less to do with the nature of the defect . . . than with the ultimate causation issue—the particularly unique factual considerations of each individual case." In fact, plaintiffs state in their objections to discovery, which was filed prior to the

---

[1] Rule 13.3(j) provides in part, "The MDL Panel will accept as true facts stated in a motion, response, or reply unless another party contradicts them." TEX. R. JUD. ADMIN. 13.3(j), *reprinted in* TEX. GOV'T CODE ANN. tit. 2, subtit. F app. (Vernon 2005).

filing their motion to transfer, that Ford has steadfastly denied the claims involving the recalled switches "are similar, relevant or admissible," because in the words of the plaintiffs, "different switches mean different manufacturing processes and different failure modes."

Plaintiffs assert the uniqueness of the cases is clear from the following examples: (1) the "Glander" case demonstrates there are different switches manufactured by different companies, one type manufactured for Ford by Texas Instruments and another manufactured for Ford by Hi-Stat; (2) the "Bourque subrogation" case involves not only property damage, but mental anguish of several plaintiffs who are joined in one case; (3) the "Radio Shack" case involves a claim against the owner of the vehicle, the repair shop where it was located at the time of the fire, and Ford; and (4) the "Scott" case is a wrongful death case involving cause, manner of death, degree of pain and suffering, survivors' loss of consortium, economic value of decedent's life and any preexisting medical condition. Finally, plaintiffs assert Ford merely seeks consolidation for delay. We are told discovery has been conducted in several cases and they are ready for trial. At least one case is set for trial in each of the months of January, March, April, and May 2008. There are no problems with discovery or pretrial procedures, and transfer would be inefficient and uneconomical "given discovery is underway in many of these cases and there are multiple parties involved in many of the suits." According to plaintiffs, should transfer be ordered, plaintiffs and witnesses will be required to travel to a distant venue for discovery and hearings.

In reply to the plaintiffs' assertions, Ford advises us that a significant number of the plaintiffs have acknowledged there are common issues as to the switches. Ford cites us to actions taken by the so-called "Houssiere Plaintiffs" to seek consolidation of eleven Dallas County suits where suit has

---

[2] We refer to both the plaintiffs and the intervenors who are aligned with them as "plaintiffs."

been filed against Ford for damages allegedly caused by a defective switch in each case.[3]  In their motion to consolidate, which was filed in the 68th Judicial District Court in Dallas County, the "Houssiere Plaintiffs" assert the cases involve the "same questions of law or fact" because they involve Ford vehicles that contain the switches and consolidation would "facilitate the orderly and efficient" resolution of the cases.  According to Ford, the plaintiffs state the "vast majority" of the witnesses in the cases will be Ford employees, corporate representatives, design experts, and engineers.  Also, the plaintiffs state the "main issue will be the defectiveness of the switches, making evidence in such other cases equally applicable . . . ."  This motion to consolidate in the trial court was made pursuant to Texas Rule of Civil Procedure 174, which, according to Ford, if granted, would have the effect of consolidating the cases for all purposes, including trial on the merits, in contrast with consolidation for pretrial only, if the motion before us is granted.  *See* TEX. R. CIV. P. 174.  Further, as to the claim by plaintiffs that transfer will necessitate inconvenient travel to distant venues, Ford points out that the local discovery will continue to be local because parties and non-party witnesses can be deposed under the rules, normally in the county of suit for a party plaintiff or within 150 miles of where a non-party resides or is served.  TEX. R. CIV. P. 199.2.  Ford also suggests that on transfer, the pretrial judge can organize the taking of depositions such as Ford employees and suppliers and their respective current or former employees.  Finally, Ford notes for us that the central point of plaintiffs' argument is that the issues are not common because they are not identical and are unique.  Ford argues that is not the test.  Rather, the test for transfer is whether the cases are "related."

## II.  DISCUSSION AND APPLICATION OF AUTHORITIES

With these contentions in mind, we turn to the authorities and their application.  Texas Rule

---

[3] The "Houssiere Plaintiffs" number twenty-eight actual plaintiffs and forty-eight intervenors in eleven actions filed in

4

of Judicial Administration 13 provides a framework for a pretrial process that will allow cases to proceed efficiently toward trial.  *See* TEX. R. JUD. ADMIN. 13; *In re Vanderbilt Mortgage and Fin., Inc.*, 166 S.W.3d 12, 14 (Tex. M.D.L. Panel 2005).  Rule 13 authorizes us "to transfer 'related' cases from different trial courts to a single pretrial judge 'if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation.' " *See* TEX. R. JUD. ADMIN. 13.2(f), 13.3(a), 13.3(l); *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83, 84 (Tex. M.D.L. Panel 2006).  Relatedness of the cases is critical to whether we may grant a motion to transfer.  In order for us to conclude that cases are "related," there must be common issues, but the cases need not be identical.  We have previously determined:

> There may indeed be differences.  But every case is different.  No two cases are alike.  A rule 13 transfer of cases does not require that the cases be congruent or anything close to it.  It requires only that cases are "related"—i.e. that they involve one or more common questions of fact—and that transfer will serve the convenience of the parties and the witnesses and promote the just and efficient conduct of the litigation.

*In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006).

We have noted before that "[rule 13] does not require proof that witnesses have already been inconvenienced; it looks ahead and focuses on whether transferring cases to a pretrial judge would serve the convenience of parties and witnesses by preventing inconvenience in the future." *In re Silica Prod. Liab. Litig.*, 166 S.W.3d 3, 5 (Tex. M.D.L. Panel 2004); *In re Cano Petroleum*, No. 07-0593, slip op. at 5-6 (Tex. M.D.L. Panel Jan. 2, 2008).  Additionally, we have observed:

> One virtue of transferring related cases to a single pretrial judge is that issues, once raised, will be decided the same way.  A consistent and steady judicial hand at the helm should in fact promote agreements because lawyers will know where the court stands on recurring issues.  As contested issues arise, the pretrial judge will make consistent rulings, which then can be reviewed by the appellate courts as appropriate.  This, we think, serves Rule 13's goal that our system give related cases consistent and efficient treatment.

---

Dallas County.

*In re Silica*, 166 S.W.3d at 6.

### a. Common Questions of Fact

It appears from the briefing that Ford, as well as many plaintiffs, have previously taken positions regarding the existence of common issues in these cases that are contrary to the positions taken before us. This allows us to make a careful and sharp analysis of the parties' conflicting positions. Nevertheless, the description of the cases involving the switches provided to us by all participants in this proceeding reveals that, in many ways, the cases do involve different and even somewhat unique issues and twists. However, the question for us is not whether the issues in each case are identical. Rather, we must determine, first, whether the cases involve one or more common questions of fact.

Some plaintiffs contend the switches' product defect is not an issue because Ford has admitted the switch is defective, unreasonably dangerous, and several safer alternative designs exist. These "admissions" referred to by plaintiffs are attributed to at least one "recall" notice sent out by Ford which warned "[t]he [switches] may . . . overheat, smoke, or burn." Based on that premise, plaintiffs assert the only common issues are "ultimate" issues of causation and damages, which plaintiffs say are unique and individual in each case, and cannot form the basis for transfer. *See In re Kone, Inc.*, 216 S.W.3d 68, 70 (Tex. M.D.L. Panel 2005). Accordingly, plaintiffs argue the "ultimate" issue is "whether a defect present in the [switches] of the specific Ford vehicle at issue caused the specific fire and damages being complained of in each separate action."

Ford counters the plaintiffs' assertion that the product defect in each case is "admitted" by saying that

> [t]he fact that the [switch] was the subject of a product recall does not give rise to a presumption of defect. Under Texas law, plaintiffs must still show that the vehicles contained a defective component. (citation omitted). Plaintiffs, of course, know this aspect of Texas law and they seek information from Ford to prove each case.

6

Ford identifies such discovery requests and deposition notices served on them in cases involving at least the "Houssiere Plaintiffs" and the suits involving the "Cozen O'Connor" clients.[4] Those discovery requests seek information and documentation regarding the design and manufacture, and the recall history of the switches. As noted above, at least the "Houssiere Plaintiffs" have sought consolidation for all purposes pursuant to rule 174 of eleven Dallas County cases, have advised the trial court the cases involve "the same questions of law and fact," and have further advised the trial court that consolidation would "facilitate the orderly and efficient " resolution of the cases.

While we are not authorized to weigh the facts on the merits of the lawsuits which are the subject of a motion to transfer, we must conclude whether the cases share one or more common issues of fact. We conclude, on this record and at this time, the question of whether the switch was defective in each vehicle, in each case, is a common issue of fact in these cases.

Plaintiffs claim Ford's "recall' notices admit the switch is defective in each vehicle. The "recall" notice cited to us says the switches "_may_. . . overheat, smoke, or burn." (emphasis added). The word "may" used in the "recall" notice does not unequivocally state that all of the switches are defective. At this point in time, and on this record only, that remains an issue over which the plaintiffs and Ford will have not only disagreement, but litigation. At least that essential issue is common in each case.

We agree with the statement made by the "Houssiere Plaintiffs" in their motion to consolidate eleven cases in Dallas County, that ". . . the main issue will be the defectiveness of the [switches], making evidence obtained in such other cases equally applicable to the cases at bar." The fact that there may be issues in each case that are specific as to each case, including alterations of the

switches and damages, among others, does not prohibit consolidation. There may be differences, but every case is different. No two cases are alike. *In re Hurricane Rita*, 216 S.W.3d at 72; *In re Silica*, 166 S.W.3d at 6. We are confident the pretrial judge will give individual consideration to the case-specific issues, while giving consistent, uniform treatment to the common and recurring issues. *In re Hurricane Rita*, 216 S.W.3d at 72; *In re Silica*, 166 S.W.3d at 6.

### b. Delay

Plaintiffs raise concerns that Ford seeks delay by this motion because there are imminent trial settings where the plaintiffs will be ready and no discovery problems exist. However, the appointment of a pretrial judge has no direct effect on existing settings. Our transfer order simply puts in place a pretrial judge to rule on pretrial matters, including whether to remand cases for trial or whether the current trial setting should be postponed. Also, the granting of an MDL motion does not require all cases to proceed apace with the slowest developing cases. The pretrial judge, in his discretion, will determine when a particular case should be remanded for trial on the merits. *In re Cano Petroleum*, No. 07-0593, slip op. at 5-6; *see* TEX. R. JUD. ADMIN. 13.7 (addressing remand of cases). Also, in order for a movant to satisfy its burden, it need not be shown that there currently exists disagreement or difficulties in discovery. One virtue of transferring related cases to a pretrial judge is that issues, once raised, will be decided the same way in the future. In fact, a consistent and steady judicial hand at the helm should promote agreements because the lawyers will know where the pretrial judge stands on recurring issues. As contested issues arise, the pretrial judge will make consistent rulings which can be reviewed by the appellate court as appropriate. *In re Silica*, 166 S.W.3d at 6.

---

[4] The "Cozen, O'Connor" clients include the plaintiffs and intervenors in at least four cases; three in Dallas County and one in Harris County. The precise number of plaintiffs and intervenors has not been described by plaintiffs and we cannot make that determination on this record on our own.

### c. Will Transfer Further the Convenience of the Parties and Witnesses and Promote the Just and Efficient Conduct of the Actions?

Plaintiffs raise the additional concern that, if Ford's motion is granted, they must attend hearings and depositions away from the chosen venue on matters of minimal importance to them. They argue this would cause inconvenience and increased expenses to attend such events. Having addressed similar concerns before, we apply the same reasoning here.

> We are confident that the pretrial judge, upon request, will address these concerns. The pretrial judge might, for example, ensure that parties with property damage cases need not participate in damages-only discovery in injury and death cases and visa versa . . . . And the court could allow any lawyer who thinks his client will not be interested in a deposition to e-mail the lawyer who noticed the deposition and seek assurances about the scope of the questioning; the court could grant the right to re-depose the witness if the assurances were not accurate or something unexpected occurred. These suggestions are illustrative only; lawyers should be creative in asking for efficiency-seeking relief that is tailored to the situation. The pretrial judge has ample discretion to fashion such relief.

*In re Cano Petroleum*, No. 07-0593, slip op. at 5-6.

Further, this panel has considered similar motions to transfer where each individual case in the group of cases sought to be transferred unquestionably arose from separate events giving rise to the claim.[5] In those cases, almost identical arguments were made in opposition to transfer. Many plaintiffs argued movants had not met their burden of proof to demonstrate how transfer would serve the convenience of parties and witnesses because there had been no showing that there were existing problems in discovery or administration of the cases. Also, many plaintiffs argued movants had not met their burden to show that transfer would promote the just and efficient handling of the cases because the cases were being handled efficiently and without significant disagreement. However,

---

[5] *See In re Silica*, 166 S.W.3d at 4 (addressed seventy-one suits, involving 158 defendants, pending in fifty-one district courts in twenty counties respecting use of silica in various building materials); *In re Firestone/Ford Litig.*, 166 S.W.3d 2 (Tex. M.D.L. Panel 2004) (damages resulting from incidents involving tire tread separation alleged to be product defect); *In re Vioxx*, No. 05-0436 (Tex. M.D.L. Panel, order of Aug. 25, 2005) (suits respecting claims for use of prescription drug); *In re Bridgestone/Firestone Inc.*, 106 S.W.3d 730 (Tex. 2003) (orig. proceeding) (Mandamus conditionally issued by Texas Supreme Court regarding pretrial judge's order allowing discovery of Firestone's trade secret in 150 cases involving alleged tread separation and Ford Explorer vehicle roll-overs. Pretrial judge assigned pursuant to Texas Rule

we made it clear that, as to the convenience issue, rule 13 "does not require proof that witnesses have already been inconvenienced; it looks ahead and focuses on whether transferring cases to a pretrial judge would serve the convenience of parties and witnesses by preventing inconvenience in the future." *In re Silica*, 166 S.W.3d at 5.

As we said in *In re Silica*, and we now reaffirm here for purposes of this matter, "[w]e think it is undeniable that it is more convenient for witnesses and parties who find themselves involved in several related cases to litigate in one pretrial court instead of several." *Id.* There is at least one common issue of fact in these cases. We are confident that were these seventy-seven cases to proceed on their own, without consolidation, there would be duplicative discovery as to the design, manufacture, testing, installation, recall, and performance of the switches, regardless of whether the discovery is of documents, current or former employees, or experts. It will convenience the witnesses and parties to be subject to one consistent set of orders instead of many from numerous trial courts.

Additionally, as to the issue of just and efficient handling, we have said, "[b]ut even if these cases are currently moving smoothly because the lawyers have been agreeing on pretrial issues, we see no reason why such agreeableness would cease when the pretrial phase if the case is handled by one judge instead of fifty-five." *In re Silica*, 166 S.W.3d at 6. In this case we have been advised there has been repetitive written discovery propounded and some disputes appear to exist. Upon transfer, that type of discovery, along with other discovery and any disputes, can be addressed by orders, agreed or not, of one pretrial judge in one court rather than judges presiding in twenty-eight counties over seventy-seven cases. Transfer will effect "uniform and consistent treatment." TEX. R. JUD. ADMIN. 13.

---

of Judicial Procedure 11, prior to effective date of state-wide transfer authorized by Rule 13.).

#### d. Federal Multidistrict Litigation Proceedings

Finally, although plaintiffs seek to discount its importance, a federal multidistrict litigation panel transferred "more than 50" cases for pretrial. *In re Ford Motor Co.*, 398 F.Supp. 2d 1365. We have not been advised that the decision of the federal court is in error, or that there is a specific reason we should not consider that panel's reasoning. The federal panel determined the putative class actions pending in federal court "share factual questions regarding whether certain Ford vehicles were equipped with defective or defectively-installed speed control deactivation devices. Centralization under section 1407 is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings . . . and conserve the resources of the parties, their counsel and the judiciary." *Id.* at 1366-67. That court concluded the plaintiffs' arguments about the unique nature of each case was unavailing: "These arguments are unpersuasive because the presence of differing theories or remedies is outweighed when the underlying actions still arise from a common factual core, as the actions do here." *Id.* at 1367. Although we do not address class actions, we do address cases which share similar common fact issues respecting the switches. The reasoning of the federal panel is consistent with ours. *In re Ocwen Loan Servicing, L.L.C., Mortgage Servicing Litig.*, No. 07-0037, slip op. at 4 (Tex. M.D.L. Panel Mar. 26, 2007).

### III. CONCLUSION

We conclude Ford has met its burden under rule 13. We conclude the transfer of these related cases will serve the convenience of the parties and the witnesses, and will promote just and efficient conduct.

Ford's motion to transfer is granted.

_____

Douglas S. Lang, Justice

11

PRESIDING JUDGE PEEPLES, and JUSTICES HANKS, STONE, and McCLURE join.


Opinion Delivered:  February 19, 2008.