In re STATE FARM LLOYDS
HURRICANE IKE
LITIGATION.

No. 12–0156.

Texas Judicial Panel on Multidistrict
Litigation.

May 21, 2012.

354

## ON REVIEW BY THE MULTIDIS-TRICT LITIGATION PANEL

Presiding Judge PEEPLES delivered the opinion of the MDL Panel.

State Farm Lloyds has asked us to transfer 266 insurance lawsuits, pending in sixteen counties, to an MDL pretrial court.[1] The cases arise from damage caused by Hurricane Ike in 2008.[2] By separate orders issued earlier, we have granted State Farm's Motion to Transfer and assigned a pretrial judge.

■ Administrative Rule13 authorizes us to transfer "related" cases (i.e. cases involving common questions of fact) from different trial courts to a single pretrial judge if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation. *See In re Petroleum Wholesale Litig.*, 339 S.W.3d 405, 406 (Tex. M.D.L. Panel 2009); *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70, 71–72 (Tex. M.D.L. Panel 2006); TEX.R. JUD. ADMIN. 13.2(f), 13.3(a), 13.3(*l*).

■ These cases are related because they arise from one event and the plaintiffs seek common discovery on the ground that State Farm has a "general business practice" of adjusting claims in a way that is unfairly designed to tilt the process in its favor and against the policyholder. Plaintiffs seek discovery tailored to each

1. The counties with pending cases are: Harris (134), Jefferson (37), Fort Bend (22), Galveston (18), Brazoria (16), Orange (14), Montgomery (8), Hardin (4), Polk (3), Chambers (2), Liberty (2), Tyler (2), Grimes (1), Matagorda (1), Cherokee (1), and Wharton (1).

2. Most of the cases were filed in 2010, although others were filed in 2009, 2011, and 2012. The cases before us are those remaining after a three-year abatement for mediation.

specific case and also discovery delving into State Farm's broader practices in property insurance cases generally.[3] For the reasons stated in *In re Texas Windstorm Insurance Ass'n Hurricanes Rita and Humberto Litig.*, 339 S.W.3d 401 (Tex. M.D.L. Panel 2009), and *In re Delta Lloyds Insurance Company*, 339 S.W.3d 384 (Tex. M.D.L. Panel 2008), which need not be repeated here, the cases are related for purposes of Rule 13.[4]

■■ Rule 13 is patterned after the federal MDL process, which seeks to "eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *See In re Vioxx Prods. Liab. Litig.*, 360 F.Supp.2d 1352, 1354 (J.P.M.L.2005); *accord* 15 CHARLES A. WRIGHT, ET AL, FEDERAL PRACTICE AND PROCEDURE § 3863, at 175 (2d ed.Supp.2003).

Rule 13 rests on the premise that a legal system should not give different answers to a question, or allow repetitive discovery, or subject witnesses or lawyers to conflicting demands, simply because the cases are pending before different judges in different parts of the state.

*In re Digitek Litig.*, 387 S.W.3d 115, 117 (Tex. M.D.L. Panel 2009).

■■ In deciding whether transfer to a pretrial court will further the general MDL goals of convenience, efficiency, and justice, our more specific inquiry is whether transfer would: (1) eliminate duplicative

---

3. Our record includes a sampling of pleadings, discovery requests, and orders that are said to be representative in these cases.

   Most of the allegations and discovery are case-specific. A typical petition, for example, alleges that: (1) Hurricane Ike damaged the insured plaintiff's roof, allowing water to enter and damage the house and contents; (2) the adjusters mishandled and undervalued the claim; (3) State Farm and the adjusters did not make timely settlement offers, did not timely pay the claim, engaged in fraud and misrepresentation, failed to explain their reasons for inadequate offers, failed to conduct a reasonable investigation, made an outcome-oriented investigation, and concealed information; and (4) plaintiff is entitled to actual, treble, and punitive damages because State Farm engaged in unfair settlement practices, violated the insurance code, breached the contract and its duty of good faith and fair dealing, and committed fraud.

   Other allegations and discovery are not limited to the individual case. Some petitions, for example, after making the assertions summarized above, continue with this paragraph:

   Plaintiff's experience is not an isolated case. The acts and omissions State Farm committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of State Farm with regard to handling these types of claims. State Farm's entire process is unfairly designed to reach favorable

outcomes for the company at the expense of the policyholders.

   A typical request for production seeks these items *for the last five years:* (1) training and educational materials; (2) procedure and policy manuals; (3) communications from the Department of Insurance about claims-handling practices; (4) advertisements; (5) demand letters, complaints, and lawsuits; (6) materials given to adjusters, contractors, and roofers; (7) computer programs and electronic data; (8) reference materials; (9) materials and documents given to contractors and roofers; (10) organizational charts; and (11) correspondence about problems with billing and claims handling.

   The same request seeks the following documents *from 2002 to the present:* (1) correspondence to and from vendors; and (2) all property-damage lawsuits or "disputes" against State Farm nationwide. It also seeks the following documents *without time limitation:* (1) previous discovery requests concerning property damage; (2) discovery requests concerning training; and (3) studies that either analyze claims strategies or are designed to help improve corporate profits. One other request seeks correspondence and lawsuits *since 2000*.

4. We have denied the motion for transfer in the *Theresa Moor* case, which was filed by an attorney who has only one lawsuit and seeks only case-specific discovery.

and repetitive discovery, (2) minimize conflicting demands on witnesses, (3) prevent inconsistent decisions on common issues, and (4) reduce unnecessary travel. *Id.* at 116–17. A fifth objective of the MDL process is to allocate finite judicial resources intelligently by minimizing the occasions when different judges decide the same or similar issues again and again. When one trial judge has decided an issue that is common to a set of related cases, the legal system cannot afford to let other trial judges spend time deciding the issue again. Time and energy are finite quantities, and when a judge spends docket time and effort on $A$ and $B$ there will be less time and energy remaining for $X$ and $Y$. Rule 13's concern for efficiency rests on the belief that unnecessary relitigation of issues, which can deprive other litigants of their fair share of courtroom time, is an extravagance that the legal system cannot afford. "To the extent that the pretrial judge's workload does increase, that would seem to be more than offset by the decreased workload the other [ ] judges will collectively enjoy." *See In re Silica Prods. Liab. Litig.,* 166 S.W.3d 3, 8 (Tex. M.D.L. Panel 2004).

■■ The parties disagree as to whether judges in the different counties have already issued inconsistent rulings, and whether witnesses have already been inconvenienced by conflicting demands.[5] We need not resolve these disagreements about the past because Rule 13 focuses on whether assigning the cases to an MDL pretrial court will further the goals of convenience, efficiency, and just handling *in the future.* *See, e.g., In re Continental Airlines Flight 1404,* 387 S.W.3d 925 (Tex. M.D.L. Panel 2009) ("A moving party need not establish an existing problem that requires correction"); *In re Ocwen Loan Servicing Litig.,* 286 S.W.3d 669, 672 (Tex. M.D.L. Panel 2007) ("Rule 13 seeks to prevent the occurrence of problems in the future and is not limited to correcting ongoing problems from the past"); *Hurricane Rita Bus Fire, supra,* 216 S.W.3d at 72 ("The movant need not show that anyone has already been inconvenienced or that there are existing problems to be addressed")[6]; *Silica Litig., supra,* 166 S.W.3d at 5 (MDL motion does not require showing of inconvenience or other past problems; it "looks ahead" and asks whether transfer to a pretrial judge would promote convenience in the future).[7]

To be sure, a history of inconsistent rulings and conflicting demands on witnesses can indicate what might happen in the future; and such a history can also help justify a stay of proceedings while the motion is being considered. But nothing in the rule, or the policies it serves, requires proof of existing dysfunction before the MDL process may be invoked to bring order and rationality to the handling of related cases.

5. The main brief for the plaintiffs says the various courts "have made literally thousands of pretrial rulings."

6. As we said in *Hurricane Rita,* though no witnesses "have yet been subjected to conflicting demands or repetitive discovery, we conclude that assigning one pretrial judge to handle the cases arising from this one tragic event will further rule 13's laudable goals of efficiency and convenience." *Hurricane Rita Bus Fire,* 216 S.W.3d at 72.

7. These holdings "[do] not mean that it is sufficient to make the bare assertion that witnesses might be inconvenienced. The circumstances of the litigation must at least make the assertion plausible." *In re Ad Valorem Tax Litig.,* 216 S.W.3d 83, 86 (Tex. M.D.L. Panel 2006). The assertion is plausible here, where 266 cases remain after mediation of many more, discovery is in full swing, and many cases involving common witnesses may be remanded for trials.

When 266 cases with common issues are pending in sixteen counties, litigants who are unhappy with an early ruling may be tempted to present the issue again in a second court. This is especially true with rulings on the scope of discovery, such as what categories of documents (like those summarized in footnote 3) must be located and produced, and for how many years.[8] Discovery will be reasonably confined when the issues are limited to coverage, causation, the claim settlement process, and damages involving *one plaintiff's property and a single event.* But when, as here, the issues are expanded to a defendant's business practices generally, over a period of years, there are likely to be repeated efforts to seek broader discovery rulings from other courts. This is true because if a second court grants discovery that the first court denied, the documents are, in practical effect, produced for all cases.

We now consider arguments that: (1) transfer will cause delay; (2) transfer is not needed because several counties have already set up pretrial courts for these cases; (3) transfer to a pretrial court will result in "one size fits all" discovery; and (4) the panel should await decisions in pending mandamus proceedings, a corrective process that shows the system is working as designed.

**Delay.** Plaintiffs express concern that transferring these 266 cases to one pretrial court will delay several existing trial settings and will also delay all the cases generally. As we have said before, an MDL proceeding should not cause delay unless the pretrial judge consciously decides, as a matter of discretion, to remand a case later rather than sooner.[9] The delay argument also seems weakened by the fact that some cases arising from this September 2008 hurricane were filed recently, and most of the older cases were abated for more than three years to allow mediation.[10] Moreover, we are not persuaded that appointing one judge to give coordinated and consistent management to 266 cases, with common issues decided once and for all, will be slower than having several judges in different counties hold sequential hear-

---

8. For example, some of the local pretrial courts have disagreed significantly about the scope and extent of e-mails to be produced concerning State Farm's business practices—the subject matter, the senders and recipients, and the period of time.

9. In *In re Cano Petroleum, Inc.,* 283 S.W.3d 179 (Tex. M.D.L. Panel 2008), we observed that MDL proceedings cause delay only if the pretrial judge decides there are reasons not to remand a case:

   First, appointment of a pretrial judge has no direct effect on existing settings. It does not necessarily cause delay; it simply puts a different judge in place to make decisions about pretrial matters, including whether and when to remand cases for trial and whether to postpone and reschedule existing trial settings.... Existing trial settings are not affected unless the pretrial judge makes such a ruling and postpones a trial setting.

   Second, the granting of an MDL motion does not mean that all cases must proceed at the pace of the slowest. When an individual case is ready for trial, the pretrial judge will ordinarily remand it for trial after consulting with the original trial court about docket realities. The readiness of one case for remand should not be affected by the readiness of other cases because appointment of a pretrial judge does not consolidate cases for purposes of trial; it brings them together for pretrial purposes only. There is no reason why *all* related cases must be ready for trial before *any* may be remanded. Nothing in this opinion or our order granting the MDL motion prevents the pretrial judge from remanding any case for trial at any time he deems the case ready. Whether a case is ready for remand and trial is a decision for the pretrial court to make in its broad discretion. *Id.* at 182 (emphasis in original).

10. See footnote 2, *supra.*

ings on the same issues, as the parties relitigate one or more common issues that were decided earlier in another court.

**Existing pretrial courts.** We are told that an MDL pretrial court is not needed because the largest counties have already assigned their cases to one judge for pretrial handling, a process that is to be commended. Not every county has done this, and even if all twelve counties with more than one case had placed their cases into the hands of one judge, there would still be sixteen judges handling 266 cases. Pretrial courts operating under the rules of civil procedure, supplemented by local rules, are simply not able to serve Rule 13's goals because an MDL pretrial court, unlike other trial courts, is empowered—and instructed—to ensure the orderly and coordinated remand of cases for trial:

> ... Rule 13 contemplates that the pretrial judge will be involved in the details of trial settings. When discovery is complete and an MDL case is ready for trial, Rule 13 does not allow the pretrial judge to simply return the case to the trial court without consultation or further instructions. On the contrary, when remanding a case the pretrial judge is instructed to: (1) consult with the trial judge about the trial setting, (2) consider the convenience of the parties and witnesses in *the remanded case,* and (3) consider the efficient handling of *the cases remaining in the MDL proceeding* . . . .
>
> Pretrial judges are granted continuing authority over remanded cases for the plain reason that continuances, resettings, and further discovery after remand could interfere with the pretrial judge's management of the remaining MDL cases. Rule 13 therefore limits the trial judge's power to make rulings in remanded cases that might interfere

with the remaining MDL cases. Thus the pretrial judge, being responsible for the efficient handling of the entire group of MDL cases, might want to ensure that each trial setting is a realistic one, that it is first on the docket and not merely one among many cases competing for attention.

*Texas Windstorm, supra,* 339 S.W.3d at 404–405 (emphasis in original). The use of county-wide pretrial courts for these cases, while commendable, cannot suffice for a pretrial court with Rule 13 obligations and powers.

**"One size fits all" discovery.** One plaintiff stresses that he is interested in different discovery than the great majority of plaintiffs, who are largely represented by one law firm.[11] He fears that an MDL pretrial court will limit him to "one size fits all" discovery. This argument rests on a mistaken assessment of what the pretrial judge is expected to do. The pretrial judge will, of course, deal with general discovery issues common to the majority of cases. Common issues will be given uniform judicial treatment and will be decided consistently. But the judge will also give individual attention to the unique issues and contentions in other cases. Every lawsuit in an MDL proceeding will have its individual, case-specific issues, which the pretrial judge will decide as any trial judge would. Transfer of cases to a pretrial court does not make this a "big issues only" proceeding; "it simply puts a different judge in place to make decisions about pretrial matters...." *Cano Petroleum, supra,* 283 S.W.3d at 182. As we have said before, "We are confident that the pretrial judge will give individual consideration to case-specific issues, while giving consistent, uniform treatment to the common

---

11. One law firm represents the plaintiffs in 200 of the 266 cases.

and recurring issues." *See Silica Litig., supra,* 166 S.W.3d at 6.

**"The system is working."** State Farm has sought mandamus review of several adverse discovery rulings. We are told that the appellate courts will soon decide these cases and therefore "the system is working as it is designed to work." This argument fails to recognize two realities. First, mandamus review of individual rulings for abuse of discretion will not address any of Rule 13's most salient objectives: to eliminate duplicative and repetitive discovery, to promote consistent rulings on common issues, to avoid conflict and inconvenience, and to conserve judicial resources. The availability of mandamus review, whose importance is not questioned, does not satisfy the need for a pretrial court. Second, and more important, the MDL procedure must also be considered part of the Texas legal system "as it is de-

signed to work." Rule 13, based on a mandate from the Texas Legislature in 2003, has added an additional procedure for cases with common issues of fact where the values of convenience, efficiency, and just handling are implicated. When a pretrial MDL court is assigned in an appropriate set of cases, as has happened here, the system is working as it is designed to work.

For the reasons stated, the motion to transfer is granted.

Chief Justice STONE, Chief Justice McCLURE, and Justice BROWN concur. Chief Justice WRIGHT did not participate.