**In re STATE FARM LLOYDS HIDALGO COUNTY HAIL STORM LITIGATION.**

**No. 14–0169.**

Texas Judicial Panel on Multidistrict Litigation.

May 13, 2014.

---

## OPINION

Justice HARVEY BROWN delivered the opinion of the MDL panel.

Within a 24–day period in the spring of 2012, two hailstorms occurred in Hidalgo County, causing damage to residences across the county. Eventually over 1,000 residents filed lawsuits in that county against their insurers arising out of the insurers' handling of the residents' insurance claims. We granted two insurers' requests for an MDL for the two hailstorms. In short order, the cases against a third insurer (Allstate Texas Lloyds) were transferred into the same MDL pretrial court. Through Rule 13's tag-along procedure, the MDL grew to cover hailstorm insurance coverage cases against over 30 insurers, without objection.

One insurer that was not covered by our previous orders, State Farm Lloyds, was then sued in over 100 lawsuits in ten different district courts in Hidalgo County. These lawsuits were originally transferred to the existing MDL through tag-along notices without a formal motion. State Farm, however, objected. In February 2014, we granted State Farm's motion requesting that the cases be remanded to the trial courts in which they were originally filed.[1] We explained that the cases against the other insurers in the MDL were not related to the cases against State Farm.[2] The State Farm policyholder plaintiffs now ask us to establish a separate MDL and transfer their cases to it for consolidated and coordinated pretrial proceedings. State Farm opposes the request. We grant the motion.

## BACKGROUND

All of the 111 plaintiffs who have sued State Farm are represented by the same law firm. All of the plaintiffs claim that State Farm engaged in unfair settlement practices by either unreasonably underpaying or wrongfully denying their claims for property damage. Plaintiffs allege violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act, breach of contract, and breach of the duty

---

1. *In re Wellington Ins. Co. Hailstorm Litig.*, No. 13–0123, 2014 WL 1327586 (Tex.M.D.L. Panel Feb. 13, 2014).

2. *Id.* at *1 n. 4, *2 (stating that "whether State Farm engages in unlawful business practices is not related factually to whether other insurers do so").

of good faith and fair dealing. In their motion, the facts of which we take as true unless controverted by the respondent,[3] they allege that the policy language in all of the cases is "the same or similar." Plaintiffs assert that they all suffered similar wind and hailstorm damage from these two storms. Plaintiffs' discovery requests seek virtually identical types of information in all the cases. Of the 111 lawsuits, five adjusters handled more than 60 of the claims. State Farm has divided its defense of the cases among seven law firms. Nonetheless, State Farm's defenses are also virtually identical.

## FIRST PRONG: RELATEDNESS

■ Texas Rule of Judicial Administration 13 creates an MDL panel and authorizes it to transfer "related" cases to a single pretrial judge if "transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases." Under Rule 13.3, the transfer of cases involves a threshold question: whether the cases are "related."[4] "If cases are not related we lack authority to assign them to an MDL pretrial judge, even if such an assignment would serve the interests of convenience and efficiency."[5]

■ The relatedness inquiry examines whether the cases involve "one or more common questions of fact."[6] Rule 13 does not require that common fact questions predominate.[7] While the number of common fact questions necessary to cause cases to be related is not capable of a bright-line rule, cases involving complicated, numerous, or significant common fact questions are more likely to be considered related.

■ For first-party insurance claims arising out of common significant weather events against a common insurer-defendant, a party advocating use of an MDL must show more than the existence of the undisputed weather events.[8] Instead, we require a party to show two common fact questions: (1) an allegation that the insurer handled claims in accordance with standard business practices and (2) the significant weather events occurred in "close proximity."[9] We have applied this two-part test to create MDLs for other Hidalgo County hailstorm claims when brought against two other carriers[10] and subse-

3. TEX.R. JUD. ADMIN. 13.3(j).

4. TEX.R. JUD. ADMIN. 13.3; *In re Deepwater Horizon Incident Litig.*, 387 S.W.3d 127, 128 (Tex.M.D.L. Panel 2011) ("Relatedness is a threshold question.").

5. *In re Deepwater Horizon*, 387 S.W.3d at 128.

6. *See* TEX.R. JUD. ADMIN. 13.2(f); TEX. GOV'T CODE § 74.162 (West 2013).

7. *See In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70, 72 (Tex.M.D.L. Panel 2006); *In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3, 6 (Tex.M.D.L. Panel 2004). *Cf. In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 939 F.Supp.2d 1376, 1377 (J.P.M.L.2013) (observing that federal MDL rule does not require "complete identity or even a majority of common factual ... issues"); *In re Gadolinium Contrast Dyes Prods. Liab. Litig.*, 536 F.Supp.2d 1380, 1382 (J.P.M.L.2008) (same).

8. *In re Delta Lloyds Ins. Co. of Houston*, 339 S.W.3d 384, 387 (Tex M.D.L. Panel 2008) (stating that insurance coverage disputes arising from same weather event are not necessarily "related" for purposes of Rule 13 because occurrence of single weather event "is a common undisputed fact rather than a 'common question of fact' under Rule 13.").

9. *In re Nat'l Lloyds Ins. Co. Hurricane Litig.*, 422 S.W.3d 926, 929–30 (Tex.M.D.L. Panel Order 2013).

10. *In re Wellington Ins. Co. Jefferson Cnty. Hailstorm Litig.*, No. 13–0123 (Tex.M.D.L. Panel Order Apr. 7, 2013).

quently to exclude from the MDL claims against State Farm.[11]

The first part of the relatedness test—requiring an allegation in the claimant's petition that an insurer followed the same standard practices and procedures in handling each plaintiff's claim—is satisfied. All the petitions state that the individual plaintiff's experiences were "not isolated." Rather, State Farm's acts and omissions "occur[red] with such frequency that they constitute a general business practice ... with regard to handling these types of claims." State Farm's "entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholder." In other words, Plaintiffs allege that State Farm engaged in common wrongdoing that harmed each of them. By invoking claims of standard practices, Plaintiffs seek to enlarge the dispute beyond the facts unique to the individual plaintiff's particular property and to obtain discovery beyond their individual disputes with State Farm. This allegation necessarily creates common witnesses and written discovery.

■ "[C]laims challenging standard business practices standing alone are insufficient to establish relatedness...."[12] A party must also satisfy the second part of the relatedness test—requiring that the lawsuits share significant weather events that occurred in "close proximity" to each other. The events here satisfy this second requirement.

State Farm nevertheless argues that close proximity of these two weather events should not be sufficient to demonstrate relatedness because the jury questions will require separate proof for each resident insured and each lawsuit "is primarily a suit for breach of contract, and turns exclusively on the claimant's policy and facts specific to the structure of their homes or property." While State Farm may make that argument in the trial court, that is not what Plaintiffs claims here.

State Farm responds that Plaintiffs' "naked assertions" should not be sufficient to demonstrate common fact questions. According to State Farm, Plaintiffs cannot meet their burden to demonstrate common questions of fact "with a bare assertion that there is a standard business practice devoid of any supporting factual content." There is more than a "naked assertion" because Plaintiffs' allegation of standard business practices must be accompanied by proof that the weather events occurred in close proximity to demonstrate relatedness.

■ The temporal and geographic proximity requirement helps ensure that there is more than a "naked assertion" of standard business practices. This requirement serves two purposes. First, it prevents the creation of a single MDL to govern all extra-contractual claims against an insurer that allege standardized business practices without temporal or geographic limitations.[13] Second, when storms are in close geographical and temporal proximity, re-

---

**11.** *In re Wellington Ins. Co. Hailstorm Litig.,* 427 S.W.3d 581 (Tex.M.D.L. Panel Feb. 13, 2014).

**12.** *In re Nat'l Lloyds Ins. Co. Hurricane Litig.,* 422 S.W.3d 926, 931 (Tex.M.D.L. Panel 2013).

**13.** *Id.; see also id.* at 932 (Jeff Brown, J., concurring) (stating that it would be absurd, impractical and unworkable to tie "an MDL to a defendant's behavior without also tying it to some other limitation—such as the time, place, or method by which the damage was caused" because such a rule "could result in a perpetual MDL concerning just cases filed anywhere in the state against that single defendant.").

sulting lawsuits against a common insurer are more likely to involve common claims-handling practices, common witnesses, common discovery, and common legal issues. And when storms not only have temporal and geographic proximity, but also have the same type of storm, resulting lawsuits against a common insurer are even more likely to involve common fact questions concerning the claims-handling practices and the storms' resulting damage.[14]

Finally, State Farm asserts that relatedness does not exist under *In re Kone, Inc.*, 216 S.W.3d 68 (Tex.M.D.L. Panel 2005). In that case, four hospitals in four counties sued for breach of an elevator maintenance contract. The elevator maintenance company alleged that there were common fact questions because the court and jury would have to determine five identical questions, such as whether the contract had been breached, whether the hospital had been harmed, and the legal viability of certain claimed damages. *Id.* at 69. There was no contention in *Kone* that the maintenance problems were the same at all four hospitals or that the defendant had

a standard maintenance policy that caused the claimed damages. As a result, we held that the defendant had not demonstrated common fact questions, "only common ultimate issues." *Id.* at 70. Unlike *Kone*, Plaintiffs do assert a standard business practice and their claims involve weather events that are both temporally and geographically close in proximity.

We conclude that the threshold relatedness inquiry is satisfied.

## SECOND PRONG: EFFICIENCY

We next consider whether transfer from different trial courts to a single pretrial judge would "(1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation."[15] Rule 13 aims to further the goals of convenience, efficiency, and justice by (1) eliminating duplicative and repetitive discovery, (2) minimizing conflicting demands on witnesses, (3) preventing inconsistent decisions on common issues, (4) reducing unnecessary travel, and (5) creating judicial efficiency through the use of a single judge.[16] We conclude that

**14.** *See In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d 130, 135 (Tex.M.D.L. Panel 2012) (stating that critical issue is "the damages sustained and corporate policies that are said to have waxed and waned throughout litigation involving several major storms in coastal Texas."); *In re Delta Lloyds*, 339 S.W.3d at 393 (holding that common issues of fact existed where policyholders challenged conduct of insurers in adjusting claims arising from two hurricanes); *In re Texas Windstorm Ins. Ass'n Hurricanes Rita and Humberto Litig.*, 339 S.W.3d 401 (Tex.M.D.L. Panel 2009) (holding 42 claims against insurers were related where plaintiffs alleged insurers had designed and pursued standard business practice of handling claims so as to minimize payments to insureds, leading to discovery requests seeking information about adjusters' training; claims handling procedures and guidelines; handling of other claims; complaints and lawsuits by other insureds; personnel files; and net worth); *In re Standard*

*Guar. Ins. Co.*, 339 S.W.3d 398, 400 (Tex. M.D.L. Panel 2009) (stating that cases are "related" if they share common questions of fact regarding defendant insurance company's "alleged conduct in adjusting the individual insurance claims and the alleged contractual basis for denying each plaintiff's claims."); *In re Ocwen*, 286 S.W.3d 669, 672 (Tex.M.D.L. Panel 2007) (holding that claims "based on standard practices and procedures" followed by single company in conduct of its business shared common questions of fact).

**15.** *In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d at 133 (quoting *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83, 84 (Tex.M.D.L. Panel 2006)).

**16.** *See In re State Farms Lloyds Hurricane Ike Litig.*, 392 S.W.3d 353, 355–56 (Tex.M.D.L. Panel 2012); *In re Digitek Litig.*, 387 S.W.3d 115, 116–17 (Tex.M.D.L. Panel 2009).

these goals would be satisfied by transfer here.

A core claim that runs through all of these cases is Plaintiffs' assertion that State Farm had a standardized practice of improperly denying claims. As a result of the common fact questions regarding State Farm's claims-adjusting practices and the contractual basis for the denial of some claims, a common "pool of fact and employee witnesses will likely need to be deposed."[17] Additionally, written discovery responses are likely to overlap—at least to the extent discovery concerns these common practices and handling of other claims in an attempt to show a pattern.[18] "Coordination of this discovery in a single pretrial court will greatly reduce the time and expense to both the parties and fact witness[es], because, among other things, the consolidated proceedings will prevent the needless time and expense of [repetitive] written and deposition discovery, and consolidation will also ensure that identical pretrial issues, including discovery disputes and expert issues regarding [State Farm's] conduct, are resolved in a consistent manner among the cases."[19] State Farm has not persuaded us that the distinct issues from the separate lawsuits—such as the individual damage to each

home—will make it inefficient to utilize an MDL judge in this case.[20]

## CONCLUSION

We conclude that Plaintiffs have shown that the cases listed in their motion are "related" within the meaning of Rule 13 and that transferring them to one pretrial court would serve the convenience of the parties and witnesses and the efficient resolution of the claims. For these 111 lawsuits, "[a] consistent and steady judicial hand at the helm should in fact promote agreements because lawyers will know where the court stands on recurring issues. As contested issues arise, the pretrial judge will make consistent rulings, which can then be reviewed by the appellate courts as appropriate."[21] Accordingly, Plaintiffs' motion to transfer these cases to a pretrial court is granted.

Presiding Judge PEEPLES, Chief Justices STONE, and McCLURE, and Justice LANGMEIRS join.

---

17. *In re Delta Lloyds Ins. Co. of Houston*, 339 S.W.3d at 389.

18. *See id.*

19. *Id.*

20. *See In re Cano Petroleum, Inc.*, 283 S.W.3d 179, 183 (Tex.M.D.L. Panel 2008) (difference in damages caused by wildfire did not mean that common issues did not predominate; "it

makes sense to have one judge handle the pretrial phase of all these enormous wildfire cases arising from a common disaster, giving consistent, unified treatment to the common issues and individualized treatment to the issues that are different.").

21. *In re Silica Prod. Liab. Litig.*, 166 S.W.3d 3, 6 (Tex.M.D.L. Panel 2004).