**IN RE VOLKSWAGEN CLEAN DIESEL LITIGATION**

**MDL No. 15–0884**

Texas Judicial Panel on Multidistrict Litigation.

OPINION ISSUED: January 14, 2016

C. Vernon Hartline, Jr. for Volkswagen Group of America, Inc.

Craig M. Patrick, for Mary Alford.

## MEMORANDUM OPINION

Justice Harvey Brown delivered the unanimous opinion of the MDL panel.

Volkswagen Group of America, Inc. and Audi of America, LLC (collectively Volkswagen) ask us to create an MDL pretrial court for over 60 lawsuits pending against them in ten different counties. The lawsuits arise out of a "Notice of Violation" (also referred to as an NOV) issued by the Environmental Protection Agency, in which the EPA alleges that Volkswagen manufactured and installed "defeat devices in certain 2009 through 2015 model year diesel light-duty vehicles equipped with 2.0–liter engines which bypass, defeat, or render inoperative elements of the vehicles' emission control system that exist to comply with [ ] emission standards" under the Texas Clean Air Act. Tex. Health & Safety Code Ann. §§ 382.001 *et seq.* (West 2010) ("TCAA"). The vehicles included in

the EPA NOV are certain Model Year 2009 through 2015 Volkswagen Jettas, Golfs, Beetles, Passats and Audi A3s ("the Clean Diesel Vehicles"). Plaintiffs assert that during these years Volkswagen misrepresented that the Clean Diesel Vehicles complied with U.S. emissions laws.

The lawsuits include (1) at least four "expedited discovery" lawsuits brought under Rule 169 in county courts at law by individual purchasers of Volkswagen automobiles, (2) at least two "expedited discovery" lawsuits brought in a district court, (3) individual lawsuits by consumers, (4) lawsuits (or interventions) by six counties, and (5) two lawsuits brought by the State of Texas.

The State lawsuits are a consumer protection enforcement lawsuit brought by its Consumer Protection Division (CPD) under the Deceptive Trade Practices Act[1] (CPD Action) and an environmental enforcement lawsuit brought under the Texas Clean Air Act (TCAA Enforcement Cases).[2] The TCAA Enforcement Cases are exercises of the State's police powers to enforce provisions of the TCAA against Defendants. The TCAA Enforcement Cases seek civil penalties, attorney's fees, and/or statutory injunctive relief under Texas law.

Volkswagen's motion to transfer is not opposed by two counties. Nor is it opposed by the plaintiffs in twenty-six other lawsuits on behalf of over 500 consumers.[3] But oppositions to the motion have been filed by various parties bringing expedited discovery lawsuits (the Expedited Plaintiffs) and is also opposed by El Paso County, which contends that it faces unique damages because of "serious environmental problems" created within the boundaries of its bordering neighbor, the City of Juarez.

While this motion was pending, and at the request of a number of plaintiffs in over 451 lawsuits pending against Volkswagen in over 60 federal courts, a federal MDL was created in a California court on December 8, 2015, concluding that the cases involved "common questions of fact" and that centralization would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, MDL No. 2672, slip op. at 2 (J.P.M.L Dec. 8, 2015) (transfer order). Since that date, the federal government has filed a federal lawsuit seeking billions of dollars in penalties. Volkswagen also faces potential criminal charges.

Having concluded that these suits are related and that transfer would result in more efficient pre-trial of the related cases, we grant the motion to transfer these Texas cases.

## FIRST PRONG: RELATEDNESS

Texas Rule of Judicial Administration 13 creates an MDL panel and authorizes it to transfer "related" cases to a

---

1. The DTPA charges the State of Texas, through the Consumer Protection Division of the Texas Attorney General, with protecting consumers against false, misleading, and deceptive business practices. TEX. BUS. & COM. CODE ANN. § 17.47 (West 2011). The DTPA creates a different burden of proof for any action by the CPD and grants the State authority to seek injunctive relief. TEX. BUS. & COM. CODE ANN. § 17.47(a); 17.50.

2. As used herein, the collective phrase "TCAA Enforcement Cases" also includes the lawsuits and interventions brought by various counties as well any tag-along cases filed by local governments to enforce the TCAA under Chapter 7 of the Texas Water Code. *See generally* TEX. WATER CODE ANN. § 7 (West 2008).

3. Not surprisingly, the parties disagree regarding the best location for the pretrial court.

single pretrial judge if "transfer would be for the convenience of the parties and witnesses and would promote the just and efficient conduct of the cases." Tex. R. Jud. Admin. 13.3(a)(2). Under Rule 13.3, the transfer of cases involves a threshold question: whether the cases are "related."[4] The relatedness inquiry examines whether the cases involve "one or more common questions of fact."[5]

The consumer cases brought by individuals contain core questions of fact that arise out of the same device, the same conduct surrounding its purpose, design, and installation, and the same type types of vehicles. As noted by the federal court order creating a federal MDL, the numerous lawsuits against Volkswagen all

> involve common factual questions regarding the role of VW and related entities in equipping certain diesel engines with software allegedly designed to engage emissions controls only when the vehicles undergo official testing, while at other times the engines emit nitrous oxide well in excess of legal limits.

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.,* slip op. at 2.

The Plaintiffs who oppose transfer to an MDL assert that Volkswagen's decisions that led to it equipping its vehicles with "defeat devices" to evade federally mandated emissions standards do not present common questions of fact because they are "admitted, undisputed and indisputable." Relying on *In re Delta Lloyds Ins. Co. of Houston,* 339 S.W.3d 384, 387 (Tex.

M.D.L. Panel 2008), these Plaintiffs contend that, to the extent there are common questions of fact, they are insufficient because "a common origin or common event, without more, does not make cases 'related' under Rule 13." *In re Deepwater Horizon Incident Litig.,* 387 S.W.3d 127, 128 (Tex. M.D.L. Panel 2011). But the common related event that was insufficient in *Delta Lloyds Insurance* was an act of nature, not an act by a party. 339 S.W.3d at 387. And while there was a common event in *Deepwater Horizon*—the BP explosion—the eight lawsuits arising from that explosion involved different types of damage claims, involving "different allegations arising from different events on different dates" and not involving liability for the explosion itself. *In re Deepwater Horizon Incident Litig.,* 387 S.W.3d at 128.[6] Finally, belying their claim that the common liability facts are undisputed, the parties opposing the transfer have not offered to forgo discovery on Volkswagen's conduct. This discovery likely will be extensive, delving into the entities and individuals involved in these decisions, their motives, and Volkswagen's business practices.[7]

The State has its own separate grounds for opposing the transfer. First, it contends that "the TCAA Enforcement Cases fail the relatedness test when compared with the private consumer damage cases." Second, it argues that its CDP Action differs from individual consumer's claims even though all allege DTPA violations. According to the State, the DTPA provisions that allow it to prosecute a claim on

---

4. Tex. R. Jud. Admin. 13.3(a); *In re State Farm Lloyds Hidalgo Cty. Hail Storm Litig.,* 434 S.W.3d 350, 353 (Tex. M.D.L. Panel 2014).

5. *See* Tex. R. Jud. Admin. 13.2(f); Tex. Gov't Code § 74.162 (West 2013).

6. The common event of the explosion was merely the but-for cause of the claims; the

plaintiffs in those cases were not contending that BP was liable for the explosion itself. *Deepwater Horizon Incident Litig.,* 387 S.W.3d at 128–29.

7. The State acknowledges that Volkswagen's knowledge and intent "may relate to the amount of civil penalty assessed."

behalf of all Texas consumers "has unique purposes, standards, and remedies distinct from private causes of action brought directly by consumers;" therefore, any transfer of its CPD Action to an MDL with private lawsuits "would in effect nullify the Legislature's manifest intent." More specifically, the State maintains that its CDP Action is not related to the multiple private consumer actions because it does not need to prove causation, scienter or reliance and its CPD Action presents different legal theories and remedies from the lawsuits brought by private plaintiffs. But "Rule 13 does not require that common fact questions predominate."[8] Moreover, Rule 13's relatedness inquiry examines the factual underpinnings of a lawsuit, not the legal theories or remedies.

Finally, the State asserts that the TCAA Enforcement Cases should not be transferred to an MDL pretrial court because "no such claim has ever been addressed through a Texas MDL consolidation." But neither have we denied such a request, and other courts have included government enforcement actions in MDLs with individual claims. *See, e.g., In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 731 F.Supp.2d 1352 (J.P.M.L. 2010); *In re Countrywide Fin. Corp. Mortg. & Sales Practices Litig.*, 582 F.Supp.2d 1373, 1375 (J.P.M.L. 2008). The critical issue is whether the CPD Action and the TCAA Enforcement Cases satisfy Rule 13's relatedness requirement. We hold that they do.

## SECOND PRONG: EFFICIENCY

■ We next consider whether transfer from different trial courts to a single pre-

trial judge would "(1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation."[9] Rule 13 aims to further the goals of convenience, efficiency, and justice by (1) eliminating duplicative and repetitive discovery, (2) minimizing conflicting demands on witnesses, (3) preventing inconsistent decisions on common issues, (4) reducing unnecessary travel, and (5) creating judicial efficiency through the use of a single judge.[10] We conclude that these goals are readily satisfied by transfer of the consumer claims brought by the individual plaintiffs.

The discovery in these cases will be complex and will overlap. As stated in the federal MDL order,

Centralization will eliminate duplicative discovery, avoid inconsistent pretrial rulings ..., and conserve the resources of the parties, their counsel and the judiciary. ... The litigation is international in scope. The vehicles addressed by the [EPA's] Notice of Violation are only a fraction of the estimated 11 million affected vehicles worldwide. Potentially relevant witnesses and evidence from VW and other entities involved in the design, production, sale and marketing of the affected vehicles and the components at issue likely are located outside of the United States. Indeed, much of the underlying conduct at the center of plaintiffs' claims likely occurred in Germany.

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, slip op. at 2.

---

8. *In re State Farm Lloyds Hidalgo Cty. Hail Storm Litig.*, 434 S.W.3d at 353.

9. *In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d 130, 133 (Tex. M.D.L. Panel 2012) (quoting *In re Ad Valorem Tax Litig.*, 216 S.W.3d 83, 84 (Tex. M.D.L. Panel 2006)).

10. *See In re State Farm Lloyds Hurricane Ike Litig.*, 392 S.W.3d 353, 355–56 (Tex. M.D.L. Panel 2012); *In re Digitek Litig.*, 387 S.W.3d 115, 116–17 (Tex. M.D.L. Panel 2009).

That court further observed that discovery may also be needed from Volkswagen's offices in Virginia, New Jersey, Michigan, California, and Tennessee. *Id.* Consolidated discovery will minimize conflicting demands upon witnesses and reduce duplicative travel given that the cases likely will have overlapping corporate and expert witnesses. *Id.*

■ The claims by the Expedited Plaintiffs and the State also satisfy these goals, although a bit more explanation is required for them. The Expedited Plaintiffs primarily argue that their cases are simple, involve limited discovery, and do not justify the cost of participating in hearings or disputes involving dozens of other lawsuits. But the pretrial court is not required to treat different cases the same. On the contrary, the pretrial court should "give individual consideration to the case-specific issues, while giving consistent, uniform treatment to the common and recurring issues." *In re Ford Motor Co. Speed Control Deactivation Switch Litig.*, 285 S.W.3d 185, 190 (Tex. M.D.L. Panel 2008); *see also In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2004) (noting that pretrial court "will give individual considerations to case-specific issues, while giving consistent, uniform treatment to the common and recurring issues"); TEX. R. JUD. ADMIN. 13.6(c), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. F app. (West Supp. 2015) ("The pretrial court should apply sound judicial management methods early, continuously, and actively, based on its knowledge of each individual case and the entire litigation . . . ."). Thus, the pretrial court has ample authority to distinguish common issues from unique issues in these cases.

While the Expedited Plaintiffs have not offered to forgo discovery in view of their assertion that the underlying facts "are not in dispute," they may believe it is unnecessary given the number of documents Volkswagen has already produced to the federal government and the statements Volkswagen has made to Congress and to the public. If so, the Expedited Plaintiffs may ask the pretrial court to set the case for trial and remand it to the trial court. TEX. R. JUD. ADMIN. 13.6(d), 13.7(b); *see also In re Toyota Unintended Acceleration Litig.*, 398 S.W.3d 892, 895 n.2 (Tex. M.D.L. Panel 2010) (noting that pretrial court "will ordinarily remand a case for trial that is ready to proceed without regard to the readiness of any of the other consolidated cases").

Finally, we note that expedited discovery, though limited by rule, still may overlap with the discovery conducted in the other litigation. Indeed, because discovery in an expedited action must be targeted to critical issues, it can be expected to address issues key to those other cases. Moreover, some of the Expedited Plaintiffs are represented by the same attorney, who could conduct discovery in one case for the benefit of other cases, thereby evading the purposes of establishing an MDL.

The State contends that it will need to expend "additional public money dealing with discovery and issues unrelated to the State's burden to establish a violation of the law under the relevant statutory provisions, such as knowledge and intent and individual damages. In short, the only result of consolidating [the enforcement actions and private claims] . . . would be a waste of public funds." But, again, the common issues do not have to predominate to satisfy Rule 13. Nor do all parties need to participate with regard to issues that are not common among them. The State can seek individual relief from the MDL pretrial court for individual issues.

The State has not persuaded us that the distinct legal theories and remedies in its lawsuits and in the lawsuits by various

counties—such as injunctive relief in the CPD Action—will make it inefficient to utilize an MDL judge in this case. We are confident the MDL judge can take those differences into account.

## CONCLUSION

We conclude that Volkswagen has shown that the cases listed in its motion, first supplement, and second supplement are "related" within the meaning of Rule 13 and that transferring them to one MDL pretrial court would serve the convenience of the parties and witnesses and the efficient resolution of the claims. Accordingly, Volkswagen's motion to transfer these cases to a pretrial court is granted.

All of these cases are to be transferred to an MDL pretrial court. However, because of potential issues that may arise through potential interlocutory appeals and result in stays related to whether the counties may pursue their claims under the TCAA while the State is simultaneous-ly pursuing its own claim,[11] we agree with the State that a separate MDL is appropriate for the TCAA Enforcement Cases. Accordingly, two MDLs will be created. Because of the relatedness and efficiency issues discussed above, we conclude it would be more efficient to appoint the same MDL pretrial court to handle both MDL groups. The pretrial court may, in its discretion, consolidate or separately set any motions in the lawsuits brought by the State and brought by local governmental entities.

Presiding Judge Peeples, Chief Justice McClure and Justice Puryear concur.

Justice Lang–Miers did not participate

---

11. The State asserts that under the TCAA it is the only proper property to the represent the public or alternatively it is "a necessary and indispensable party" to the suits brought by local governmental entities.