MDL No. 12-0156

IN RE STATE FARM LLOYDS HURRICANE LITIGATION

================================================
ON REVIEW BY THE MULTIDISTRICT LITIGATION PANEL
================================================

Chief Justice McClure delivered the unanimous opinion of the MDL Panel

We consider today whether a non-hurricane windstorm case may be joined as a tag-along to a previously created pre-trial Hurricane Ike MDL court. On April 25, 2012, we granted State Farm's request for transfer involving 266 cases pending in sixteen counties arising from Hurricane Ike in 2008. *In re State Farm Lloyds Hurricane Ike Litigation*, MDL No. 12-0156. In the opinion that issued May 21, we held that the cases were related because they arose from one event and the plaintiffs sought common discovery on the ground that State Farm has a "general business practice" of adjusting claims in a way that is unfairly designed to tilt the process in its favor and against the policy holder. *Id.* at 1. We also explained that when multiple cases with common issues are pending in different counties, "litigants who are unhappy with an early ruling may be tempted to present the issue again in a second court." *Id.* at 5. We further noted that "when the issues are expanded to a defendant's business practices generally, over a period of years, there are likely to be repeated efforts to seek broader discovery rulings from other courts." *Id.*

### THE IRVINGS' CLAIMS

Mark and Leticia Irving live in League City, Texas and claim that their home was damaged during heavy storms which passed through the area on August 23 and 24, 2010. According to their expert's report, winds gusted to 40 miles per hour causing roof shingle uplift. The Irvings

contend that in summarily denying the claim as mere wear and tear, State Farm failed to disclose that an adjustor's inspection of the roof revealed unsealed shingles. It also failed to disclose that in 2010 – after Hurricane Ike – the company decided to withhold payment for unsealed shingles. The underlying lawsuit was filed in Galveston County on July 5, 2011.

## HURRICANE IKE AND NON-IKE CLAIMS

The Irvings learned through discovery that different policies and procedures were applied to Ike and non-Ike claims. Ike claims were handled by the catastrophe office – the "CAT Operation" – while the Irvings' claims were processed by the "Texas Zone". The Texas Zone is run almost exclusively by State Farm adjustors and employees while the CAT operation uses State Farm employees and independent personnel. The plaintiffs here seek to depose Marvin Cummings, a State Farm Catastrophe Manager, to explore two points: (1) that State Farm's nearly identical homeowners' policies provided coverage in the past for unsealed shingles; and (2) that State Farm specifically claims to have paid for resealed shingles in the past, including on Hurricane Ike claims. In pleadings filed in support of their motion to remand, they argued that Mr. Cummings was responsible for overseeing the Hurricane Ike operation in Texas and was instrumental in State Farm's multiple changes in position regarding unsealed shingles: "While the policies at issue may be the same, State Farm's interpretation of whether shingles unsealed by wind were considered a covered loss pursuant to the policy changed significantly from Dolly, to Ike, and post-Ike."

## NOTICE OF TAG-ALONG

On April 30, 2012, this Panel appointed the Honorable Mike Miller, Judge of the 11th District Court of Harris County, as the MDL judge of the Hurricane Ike litigation. The next day, the Irvings filed in Galveston County a motion to compel numerous corporate representative

depositions related to resealed shingles. One day later, they served a fourth request for production. The discovery sought, "[a]ll instructions memoranda and/or other communication sent to Adjusters, Adjusting Firms or State Farm Lloyds Claims Handling Staff regarding unadhered, unsealed or lifted shingles."

State Farm gave notice of transfer in eighteen cases as "tag-alongs", contending they were related to the other MDL cases due to the plaintiffs' most recent discovery efforts. The Irvings countered with a motion to remand, asserting that this was a non-hurricane windstorm case. Judge Miller denied remand with regard to fourteen Hurricane Dolly cases but remanded four – including the Irvings' – because they did not arise from a hurricane.

## WHERE THE TRIAL COURT DREW THE LINE

The Motion to Remand was heard by Judge Miller on June 25, 2012. The positions of the parties are best understood by their precise arguments to Judge Miller:

> [State Farm] The Supreme Court order number one came out on April 27th. Order number two came out on April the 30th. Two days later [plaintiffs' counsel] set a hearing and gets a hearing on May the 4th asking for and getting from the trial court Ike discovery. Deposition of State Farm's corporate representative, Mr. Marvin Cummings, who was the Ike catastrophe team manager. Corporate representative deposition on Ike-related discovery. Sent written discovery that we have identified in our written responses on more than 30 categories of documents that are verbatim identical and Request for Production No. 1, Request for Production No. 2, Request for Production No. 3 asking for Ike training materials, Ike e-mails, Ike corporate institutional documents and on and on. The interrogatories are substantially similar. All the Requests of Production are verbatim identical. The petitions in those non-Ike cases are identical. The policies are identical.

> \* \* \* \* \*

> [Plaintiffs' counsel] What happened was I wanted the corporate rep of the person who made the decision to remove the payment of reseal shingles after Ike. Is it tangentially related? Yes. But is it a common question of fact? No.

> When I go to meet with Mr. Chandler and I am going to try to devise discovery plans, how am I going to devise discovery plans for different windstorms and hail

3

storms and things from all over the country?   If these are related because a plaintiff uses a form discovery or similar discovery, then every auto case is related.

[The Court] **Where do you draw the line?**   That is kind of what the obvious question is.   Does that mean, you know, that every case filed by [counsel's] firm against State Farm on any kind of storm claim you end up with a perpetual MDL from Mostyn's State Farm cases no matter when the loss occurred? (Emphasis added).

* * * * *

[State Farm] It is really, really important to understand this point.   We are not arguing relatedness based on generic [ ] discovery.   That is not the standard.   That is not the bright line we are asking you to draw.

The bright line we are asking you to draw are the core issues that go to the heart of the MDL discovery.   In those four cases we have identified, they deal with Ike-related discovery on lifted shingles.   They deal with Ike-related discovery on State Farm's reseal price from 2009 and 2010.   They deal very specifically with institutional practices of State Farm in adjusting wind claims, which obviously included Ike and these other four cases we have had.   And most importantly in those cases they deal with discovery efforts about the deposition and the emails of Mr. Marvin Cummings, the [CAT] team manager.

* * * * *

[Plaintiffs' counsel]   Here's the deal.   They were paying for [lifted shingles] from March of '09 until 2010.   Then they stopped.   The only reason we want to know why they were paying for them in Ike is to say if you paid for them at the end of Ike, why won't you pay my guy now.   That is no different than if I go take the trucking safety manager's deposition and say, What is your policy about inspecting a tire after it had been put back on a truck 50 miles down the road.   Sure, is it tangentially related to every trucking case?   It is, but not specific to this case.

* * * * *

[The Court] I was a little surprised that [the MDL Panel] included Dolly and Hermene [sic] and Alex, but they did.   You don't call it the Ike MDL.   You call it the Hurricane MDL.   But I think that is what we are going to have.   We are going to have a Hurricane MDL.

I will remand the four non-hurricane cases.   I will keep the hurricane cases.   I have to draw the line somewhere.   We have to draw it around hurricanes.   If we get a tropical storm on the edge of a hurricane, then I will have to cross that bridge when I get to it, I guess.

4

Those lawsuits that arose from "hurricanes" were swept into the MDL court. Those suits involving lesser winds were remanded.

## THE ARGUMENTS

The Rules of Judicial Administration authorize us "to transfer 'related' cases from different trial courts to a single pretrial judge if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation." *In re Ad Valorem Tax Litigation*, 216 S.W.3d 83, 84 (Tex. M.D.L. Panel 2006); TEX. R. JUD. ADMIN. 13.3. Rule 13.2(g) defines a tag-along case as a case related to cases in an MDL transfer order but not itself the subject of an initial MDL motion or order. There is no requirement that the cases be congruent, but they must involve one or more common questions of fact. TEX. GOV'T CODE § 74.162 (Vernon 2005); TEX. R. JUD. ADMIN. 13.2(f); *In re Hurricane Rita Evacuation Bus Fire*, 216 S.W.3d 70, 72 (Tex. M.D.L. Panel 2006). State Farm points to the following common questions of fact:

- the pleadings and discovery allege that State Farm has a general business practice of underpaying on claims;

- the issues surrounding lifted, unsealed, and resealed shingles,

- identical discovery, and

- identical policies.

We turn now to the specific issues at hand. Are these cases related, and if so, will transfer (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation?

## ARE THE CASES "RELATED"?

We begin with the Irvings' primary contention that "related" cases must arise from one

5

event: "The vehicle that this Court has prescribed for protecting against MDL-scope creep is the requirement of 'one event'." They suggest that if their claim arising from a 2010 windstorm can be dragged into the 2008 Hurricane Ike MDL, "then so can claims arising from a 2012 hail storm, a 2013 fire, a 2014 earthquake, a 2015 tornado, etc., etc., etc." Suggesting that we did not intend to create an MDL to cover every claim by every insured against State Farm, they direct us to *In re Delta Lloyds Ins. Co*, 339 S.W.3d 384 (Tex. M.D.L. Panel 2008). There, we transferred to a pretrial judge similar Hurricane Rita insurance cases against different insurers. We concluded that the cases were related within the meaning of Rule 13 because the insurers faced substantially the same extra-contractual claims and discovery requests in every case.

One year later, we issued our opinion in *In re Texas Windstorm Ins. Ass'n Hurricanes Rita and Humberto Litigation*, 339 S.W.3d 401(Tex. M.D.L. Panel 2009). TWIA sought transfer of forty-two cases involving hurricane insurance claims in Jefferson, Galveston, and Travis Counties. Thirty-eight cases involved Hurricane Rita and four arose from Hurricane Humberto. We noted that the insurers did not face mere case-specific contract claims that they failed to pay for damages covered under each insurance policy. They faced allegations that they had designed and pursued a standard business practice of handling claims so as to minimize payments to their insureds leading to discovery requests seeking information about the training of adjusters; claims handling procedures, instructions, and guidelines; the handling of other claims, including reports submitted by adjusters in other cases; complaints and lawsuits by other insureds; personnel files; and net worth. We reaffirmed our holding in *Delta Lloyds* that the extra-contractual issues made these cases related within the meaning of Rule 13. In so doing, we specifically rejected the argument that the cases were not related simply because *two* hurricanes were involved:

We consider those [Humberto] cases related to the Rita cases because they involve

6

> precisely the same extra-contractual claims and discovery, and because they will involve inquiry into the existence and extent of pre-existing damage from Rita. It is worth noting that when plaintiffs pleaded their extra-contractual causes of action and sought extra-contractual discovery, they did not make distinctions based on the kind of policy or coverage or the hurricane involved. Because of the extra-contractual claims, the cases are related within the meaning of Rule 13, even though some of them involve a different policy and a later hurricane in the same area.

339 S.W.3d at 403. We therefore disagree with the Irvings that this Panel has categorically required "one event" as the threshold for relatedness.

We come now to the crux of the issue: Where *do* we draw the line? The Saffir–Simpson Hurricane Wind Scale classifies hurricanes ─ western hemisphere tropical cyclones that exceed the intensities of tropical depressions and tropical storms ─ into five categories distinguished by the intensities of their sustained winds. To be classified as a category 1 hurricane, a tropical cyclone must have maximum sustained winds of at least 74 miles per hour. We have included lesser storms in the MDL litigation. Indeed, Hermine was a tropical storm, not a hurricane.[1] The issue, though, is not the strength of the wind, which may vary as a single storm moves throughout a coastal region, but the damages sustained and corporate policies that are said to have waxed and waned throughout litigation involving several major storms in coastal Texas. Tropical Storm Hermine (2010) and Hurricanes Ike (2008), Dolly (2008), and Alex (2010) were different storms attacking different regions at different points in time. The lawsuits were not related merely because they were Texas storms. The lawsuits were related because of wind damage to roofs and insurance coverage that allegedly changed with the swirling winds. We should not be heard to say that any lawsuit involving shingle damages as a result of a wind event would automatically be considered related. Our opinion is necessarily tailored to the policies of State Farm regarding

---

[1] *See* http://www.nasa.gov/mission_pages/hurricanes/archives/2010/h2010_Hermine.html

coverage for shingle damage arising from wind events during the period between 2008 and 2010, a time frame the plaintiffs have themselves drawn to demonstrate corporate changes that evolved as massive claims arose from large wind events along the Texas coast. Plaintiffs' counsel explained it this way at the hearing on the motion to compel discovery:

> And we believe, Your Honor, now we know, Your Honor, that State Farm took a corporate position to not pay for these even though there for awhile in Texas they did. In fact in Texas, Your Honor, they had closed 98 thousand out of 104 thousand claims in March of 2009 before they decided to pay to reseal, and then made the decision not to notify a single policyholder that they were now going to pay for these lifted shingles.
>     They go along for about 12 or 14 months to get out from underneath a TDI inquiry that's going on. There are emails of our responding to the TDI requiring reference to TWIA. The TWIA enforcement action, their answers to TDI is they are paying to reseal. Once they get past that inquiry from the TDI, lo and behold they switch back to the position, that's improper and they pull it out.
>
> * * * * *
>
> The question is on this case, Your Honor, is not whether or not the adjustor messed up in scoping the roof. **The question is did State Farm as an institution change its position on paying for these things and how they paid for it.** (Emphasis added).

That universal theme wends its way throughout repetitive storms and a multitude of lawsuits. For these reasons, we hold that this case is related to the MDL litigation.

### WOULD TRANSFER PROMOTE EFFICIENCY AND SERVE THE CONVENIENCE OF PARTIES AND WITNESSES?

The Irvings have not addressed the issues of efficiency and convenience other than to say *in passim* that State Farm's use of different personnel, different policies, and different procedures means that the goals of efficiency, convenience and justice will not be served. Yet the heart of the lawsuit is that State Farm changed its policies during a sequence of storms and an investigation by the Texas Department of Insurance. That is precisely why the plaintiffs want to depose Mr. Cummings and discover who decided to alter coverage and when that decision was made. There

8

is, of course, an MDL court already in place and functioning.

For these reasons, we grant the motion for rehearing, vacate Judge Miller's order of remand, and deny the Irvings' motion to remand.

PRESIDING JUDGE PEEPLES, CHIEF JUSTICE STONE and JUSTICE BROWN join.
CHIEF JUSTICE WRIGHT, not participating.

*Ann C. McClure*
_____

ANN CRAWFORD MCCLURE
CHIEF JUSTICE

**OPINION DELIVERED:** **October 22, 2012**