**In re NATIONAL LLOYDS INSURANCE COMPANY HURRICANE LITIGATION.**

No. 12–0248.

Texas Judicial Panel on Multidistrict Litigation.

Sept. 13, 2013.

ON REVIEW BY THE MULTIDISTRICT
LITIGATION PANEL

Chief Justice McCLURE delivered the opinion of the MDL Panel.

## INTRODUCTION

We consider today whether 84 non-hurricane cases may be joined as tag-alongs to a previously created pre-trial hurricane MDL court in Houston. On April 30, 2012, we granted National Lloyds' request for transfer of 244 cases to an MDL court and appointed Judge Mike Miller of the 11th District Court of Harris County as the pretrial judge. *In re National Lloyds Insurance Company Hurricane Litigation*, MDL No. 12–0248. These lawsuits arose from Hurricanes Dolly, Ike, Alex, and Tropical Storm Hermine and were pending in 49 different courts. Each case alleged contract, statutory, and tort claims.

In March and April 2012, two hail storms pounded Hidalgo County. Hundreds of lawsuits against multiple insurance companies were filed in various Hidalgo County courts. The Hidalgo County district judges issued standing pretrial orders and all cases were assigned to the

93rd, 206th, and 370th District Courts. On April 10, 2013, the Panel issued orders in *In re Wellington Insurance Company Hail Storm Litigation,* MDL No. 13–0123 and *In re Southern Vanguard Insurance Company Hail Storm Litigation,* MDL No. 13–0130. Pursuant to Rule 13 of the Texas Rules of Judicial Administration, the cases listed in the appendices of the motions to transfer and all tag-along cases were transferred to The Honorable Rose Guerra Reyna, Judge of the 206th District Court of Hidalgo County. None of these lawsuits included National Lloyds.

National Lloyds subsequently added 85 tag-along cases to the hurricane MDL court in Houston. Of these, 63 were pending in Hidalgo County and related to the 2012 hail storms. Eleven others were pending in Dallas County and another eleven were pending in Bexar, Dimmit, El Paso, Fort Bend, Harris, Jefferson, Liberty, Tarrant, and Wharton Counties. While the record is far from clear, these cases involved various wind storms, hail storms, plumbing leaks, and other incidents. Judge Miller originally remanded all 85 cases, but subsequently reconsidered one lawsuit and denied the plaintiff's motion to remand in *Gipson v. National Lloyds Ins. Co.* bearing Cause No. 2013–11473 and originally filed in Jefferson County. Judge Miller deferred to this panel the determination of whether the focus should be the weather event or insurer business practices. National Lloyds has filed a motion for rehearing in which it contends that as a matter of first impression, we must decide where to send the 84 cases which could fit into "an insurer-based MDL involving claims against National Lloyds related to several different storms; or a storm based MDL involving claims against 10 insurers (but not National Lloyds) related to two hail storms in Hidalgo County." Frankly, we have granted MDL relief in both circumstances. And we agree

with National Lloyds and Judge Miller that ultimately, the decision must be ours.

The Rules of Judicial Administration authorize this Panel "to transfer 'related' cases from different trial courts to a single pretrial judge if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation." *In re Ad Valorem Tax Litigation,* 216 S.W.3d 83, 84 (Tex. M.D.L. Panel 2006); Tex.R. Jud. Admin. 13.3. Rule 13.2(g) defines a tag-along case as a case related to cases in an MDL transfer order but not itself the subject of an initial MDL motion or order. There is no requirement that the cases be congruent, but they must involve one or more common questions of fact. Tex. Gov't Code § 74.162 (Vernon 2005); Tex.R. Jud. Admin. 13.2(f); *In re Hurricane Rita Evacuation Bus Fire,* 216 S.W.3d 70, 72 (Tex.M.D.L. Panel 2006).

## ARE THE CASES "RELATED"?

We begin with a review of Panel decisions dealing with the relationship between weather events and extra-contractual claims involving general insurer business practices. In *In re Delta Lloyds Ins. Co.,* 339 S.W.3d 384 (Tex.M.D.L. Panel 2008), we transferred to a pretrial judge similar Hurricane Rita insurance cases against different insurers. We concluded that the cases were related within the meaning of Rule 13 because the insurers faced substantially the same extra-contractual claims and discovery requests in every case.

> [T]he pleadings and the discovery in the underlying cases reveal that the occurrence of Hurricane Rita is not an actual "question of fact," nor is any purported question of fact pertaining to Hurricane Rita central to the resolution of the mostly contractual and statutory claims asserted against the various defendants.

Rather, the underlying factual questions of each case below are the alleged conduct of each of the particular defendants in adjusting the individual insurance claims and the alleged contractual basis for denying each plaintiff's claims.

*In re Delta Lloyds,* 339 S.W.3d at 387. Other carriers that had joined the motion to transfer were denied MDL treatment because their cases did not share the same underlying questions of fact regarding conduct in adjusting the claims and the contractual basis for denying the claims.

One year later, we issued our opinion in *In re Texas Windstorm Ins. Ass'n Hurricanes Rita and Humberto Litigation,* 339 S.W.3d 401 (Tex.M.D.L. Panel 2009). There, TWIA sought transfer of 42 cases involving hurricane claims in Jefferson, Galveston, and Travis Counties. Thirty-eight cases involved Hurricane Rita and four arose from Hurricane Humberto. We noted that the insurers did not face mere case-specific contract claims that they failed to pay for damages covered under each insurance policy. They faced allegations that they had designed and pursued a standard business practice of handling claims so as to minimize payments to their insureds, leading to discovery requests seeking information about the training of adjusters; claims handling procedures, instructions, and guidelines; the handling of other claims, including reports submitted by adjusters in other cases; complaints and lawsuits by other insureds; personnel files; and net worth. We reaffirmed our holding in *Delta Lloyds* that the extra-contractual issues made these cases related within the meaning of Rule 13. In so doing, we specifically rejected the argument that the cases were not related simply because *two* hurricanes were involved:

> We consider those [Humberto] cases related to the Rita cases because they involve precisely the same extra-contractual claims and discovery, and because they will involve inquiry into the exis-

tence and extent of pre-existing damage from Rita. It is worth noting that when plaintiffs pleaded their extra-contractual causes of action and sought extra-contractual discovery, they did not make distinctions based on the kind of policy or coverage or the hurricane involved. Because of the extra-contractual claims, the cases are related within the meaning of Rule 13, even though some of them involve a different policy and a later hurricane in the same area.

339 S.W.3d at 403.

We have since rejected the notion that this Panel has categorically required "one event" as the threshold for relatedness. *In re State Farm Lloyds Hurricane Litigation,* 387 S.W.3d 130, 134 (Tex.M.D.L. Panel 2012). In that case, we addressed whether Judge Miller properly remanded a non-hurricane case simply because a Galveston storm lacked sufficient wind speed to be classified as a hurricane. *Id.* at 133. We concluded that remand was erroneous because:

> The issue, though, is not the strength of the wind, which may vary as a single storm moves throughout a coastal region, but the damages sustained and corporate policies which are said to have waxed and waned throughout litigation involving several major storms in coastal Texas. Tropical Storm Hermine (2010) and Hurricanes Ike (2008), Dolly (2008), and Alex (2010) were different storms attacking different regions at different points in time. The lawsuits were not related because of wind damage to roofs and insurance coverage that allegedly changed with the swirling winds. We should not be heard to say that any lawsuit involving shingle damages as a result of a wind event would automatically be considered related. Our opinion is necessarily tailored to the policies of State Farm regarding coverage for shin-

gle damage arising from wind events during the period between 2008 and 2010, a time frame the plaintiffs have themselves drawn to demonstrate corporate changes that evolved as massive claims arose from large wind events along the Texas coast.

*Id.* at 134–135.

■ Reading these opinions together, we conclude that MDL treatment is inappropriate when the only common fact issue relates to standardized business practices and extra-contractual claims. To hold otherwise would result in insurer-specific MDL courts to which all cases raising those issues would be transferred. There must be something more. In *Delta Lloyds,* the common issues of fact involved the alleged conduct of the insurers in adjusting the plaintiffs' insurance claims arising from Hurricane Rita. In *Texas Windstorm,* MDL relief was granted because of the extra-contractual claims arising from two hurricanes in the same area of the state within a short time span. And in *State Farm,* we transferred lawsuits involving the policies of State Farm regarding coverage for shingle damage arising from wind events during the period between 2008 and 2010, a time frame in which corporate policies changed as claims arose from four hurricanes and one tropical storm.

■ We speak clearly today to the specific issue: Cases are related where one or more significant weather events occurring in close proximity form the framework of the litigation, and the litigation involves allegations of similar standard business practices. Individual lawsuits will address wind, wind-driven rain, hail, wind-driven hail, storm surge, rising water, flooding, and/or rainfall. It is in this context that allegations of standard business practices giving rise to contract, statutory, and extra-contractual damages highlight the importance of coordinated management that will serve the convenience and efficiency of the litigants and the lawyers.

### *The 63 Hidalgo County Hail Storm Cases*

■ Of the 84 cases remanded, 63 are pending in Hidalgo County and involve damages from the 2012 hail storms. Those 63 cases involve the same defendant, the same policies, the same extra-contractual claims, some of the same discovery requests, and the same hail storms. Those 63 cases are clearly related to each other and no party seriously contends that they are not. The issue is whether those cases are related to the National Lloyds hurricane litigation. National Lloyds claims they are because the plaintiffs seek discovery concerning a pattern of claims-handling and general business practices. It points to common discovery requests seeking information for the past five years relating to:

- Training materials for adjusters for handling property damage, hail damage, water damage, roof damage, and/or wind damage;
- Procedure or policy manuals for adjusters in handling property damage, hail damage, water damage, roof damage, and/or wind damage;
- Communications from the Texas Department of Insurance regarding practices in handling property damage, hail damage, water damage, roof damage, and/or wind damage;
- Materials meant to instruct and guide adjusters with regard to unfair claims practices, standards to be met in adjusting claims, or avoiding charges of bad faith;
- Materials that reflect complaints by insureds against National Lloyds regarding the handling of homeowner insurance claims in Texas;

- Underwriting files for each handling property damage, hail damage, water damage, roof damage, and/or wind damage claims made by all adjusters assigned to individual plaintiffs' claims; and
- Electronically stored information regarding property damage, hail damage, water damage, roof damage, and/or wind damage that has been compiled, prepared, and or supervised by National Lloyds.

The plaintiffs who have responded counter that these 63 cases are unrelated to the National Lloyds Hurricane MDL for a variety of reasons:

- The mechanism of damage—hail stones—caused substantially different property damage than hurricane winds, rain, and or storm surge;
- The National Lloyds' insurance policies involved in the hail storms cases are different from the National Lloyds' policies that were in effect and issued to the insureds affected by Hurricane Ike, including different types of coverage, different limits, and different exclusions;
- The fact witnesses and corporate representatives for the hail storm cases are different from the fact witnesses and corporate representatives for the Hurricane Ike cases;
- The proposed master discovery for the hail storm cases will be drastically different than the discovery in the Hurricane Ike cases because the damages are different, the policies and procedures for adjusting hail claims are different and the documents and information requested are from a time period four years after Hurricane Ike.

In responsive briefing, National Lloyds contends that the policies have not materially changed and that it intends to designate the same corporate representatives and adjusters. It also maintains that "the

primary disputes will not be about damaged shingles or the cost to repair a roof, but about whether National Lloyds' claims handling process entitles the plaintiffs to recover mental anguish, treble damages, and 18% penalty interest."

We readily recognize the dilemma Judge Miller faced. And we agree with him that these hail storm cases are not related to the hurricane MDL litigation. They arise from a separate weather event occurring several years after the hurricane. Because the 63 hail storm cases were improperly tagged, we deny the Motion for Rehearing as to these cases.

### The 21 Non–Hidalgo County Cases

We turn now to the remaining 21 cases subject to Judge Miller's remand which are scattered across Texas. National Lloyds informs us that these cases are related to the current National Lloyds MDL litigation: "Their only common fact issue is the way National Lloyds handles claims." We can glean only that the claims arise from a variety of wind storms, hail storms, plumbing leaks, and other assorted incidents occurring at unspecified times. Based upon our holding that claims challenging standard business practices standing alone are insufficient to establish relatedness, we deny the Motion for Rehearing with respect to these cases.

### WOULD TRANSFER PROMOTE EFFICIENCY AND SERVE THE CONVENIENCE OF PARTIES AND WITNESSES?

In the alternative, National Lloyds asks that the 63 hail storm cases be transferred to any pretrial court we choose because "the issue is not whether these cases need an MDL but which." The existing Hidalgo County hail storm cases assigned to Judge Reyna will be addressing similar discovery requests against multiple insurers arising from similar policies

and similar contractual and extra-contractual claims. National Lloyds informs us that even in these existing MDL courts, the cases are grouped by insurer:

> Each insurer has different documents, so discovery will be conducted on a per-insurer basis. Each insurer will hire its own experts. And each insurer's individual actions will determine liability for extra-contractual claims.

We accept this as true inasmuch as the respondents have not contested it. TEX.R. JUD. ADMIN. 13.3(j). But the scope of the discovery will be consistent.

Because all parties agree that transfer would promote efficiency and serve the convenience of the parties and witnesses, we transfer them to the 206th District Court of Hidalgo County, Judge Reyna presiding.

### CONCLUSION

For the reasons stated, the Motion for Rehearing of the pretrial court's order remanding the 84 tag-along cases is denied. The Motion to Transfer those cases to a pretrial court is granted as to the 63 hail storm cases and denied as to the 21 others. The 63 hail storm cases are transferred to the MDL pretrial court in Hidalgo County. The other 21 cases remain pending in the trial courts in which they were filed.

Presiding Judge PEEPLES, Chief Justice STONE, and Justice LANG–MIERS join.

Justice BROWN, concurring.

Justice BROWN concurred in the judgment of the MDL Panel.

I concur in the panel's judgment, but write separately to acknowledge its one disappointingly necessary shortcoming. I believe that National Lloyds correctly alleges that the real common element in the cases pending against it in Judge Miller's MDL is not that each one arises out of hurricane-inflicted damages, but that in each case the plaintiffs are alleging the same behavior by the insurer. Sending away cases in which the same insurer is alleged to have behaved in the same way just because hail caused the damage instead of wind likely means that similar cases will be treated differently based solely on the pretrial venue. Rule 13 was intended to prevent just such a result.

Nevertheless, tying an MDL to a defendant's behavior without also tying it to some other limitation—such as the time, place, or method by which the damage was caused—could result in a perpetual MDL concerning just cases filed anywhere in the state against that single defendant. Judge Miller recognized this possibility, and the absurdity of it, when he remanded National Lloyds' tag-along cases. There are MDLs this panel has created which have taken on a perpetual feel—asbestos and silicosis come immediately to mind. But there are none in which the common bond is just a similarity of alleged defendant behavior without any further limitation. Such an MDL would be impractical and unworkable. No defendant should be entitled to its own MDL, living on forever, with new cases added from every corner of the state every time a new storm hits. The resolution the panel has reached in this case, though imperfect, at least has definable boundaries. And so I concur.