**IN RE FARMERS INSURANCE COMPANY WIND/HAIL STORM LITIGATION**

NO. 14–0882.

Texas Judicial Panel on Multidistrict Litigation.

OPINION DELIVERED: April 7, 2015

---

ON REVIEW BY THE MULTIDISTRICT
LITIGATION PANEL

Presiding Judge Peeples delivered the opinion of the MDL Panel:

Rule 13 authorizes the MDL Panel to transfer "related" cases (i.e. cases involving common questions of fact) from different trial courts to a single pretrial judge if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation. *See In re State Farm Lloyds Hurricane Ike Litig.*, 392 S.W.3d 353, 354 (Tex. M.D.L. Panel 2012). For a transfer to be ordered, "there must be two distinct findings: that the cases are related *and* that placing them into one pretrial court will serve the interests of convenience and effi-

ciency." *See In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d 581, 584 (Tex. M.D.L. Panel 2014) (emphasis in original). A pretrial court decides the pretrial issues and then remands cases for trial in the original counties of venue.

Farmers Insurance Company (for itself and related entities) seeks creation of an MDL pretrial court for 1565 wind-and-hail-damage cases pending in 166 courts in forty-four counties.[1] The cases involve claims arising from storms that occurred between February 29, 2012 and June 11, 2014. Seventy-three percent of the claims arose from eight major storms. Lesser storms also produced multiple claims in

1. We were notified recently that settlements and new filings have changed the number from 1565 to 1723. Because the briefing was completed before the number of cases was updated, this opinion will use the original number of 1565.

2. The eight major storms (with the number of claims and the nearby counties in parentheses) occurred on the following dates:
   (1) March 28 through April 5, 2012 (335 in Hidalgo County)
   (2) April 20, 2012 (294 in Cameron, Hidalgo, and Starr Counties)
   (3) October 18, 2012 (33 in Hidalgo County)
   (4) May 27 & 28, 2013 (57 in Hale, Potter, and Randall Counties)
   (5) June 6 & 7, 2013 (121 in Cameron, Hidalgo, and Webb Counties)
   (6) April 3, 2014 (84 in Collin, Dallas, Denton, and Tarrant Counties)
   (7) April 23, 2014 (132 in Maverick County)
   (8) May 9, 2014 (93 in Webb County)
   By our count, the eight storms produced 1149 lawsuits, 73% of the 1565 total. The following nine counties had significant numbers of insurance suits from storms during the same 27–month period but on dates other than the eight major storms: Bell (10), Bexar (18), Cameron (19), Dallas (68), El Paso (11), Harris (16), Hidalgo (100), Maverick (17), and Webb (41). These 300 claims make up another 19% of the whole. Five of these counties were also affected by one or more of the eight major storms.

3. The discovery requests are essentially the same as those summarized in *In re State Farm*

the same twenty-seven month period.[2] In nearly every case the insurance policies state the coverage in substantially the same language. In addition to actual damages, statutory penalties, and attorneys' fees, the plaintiffs seek extra-contractual relief. They allege that Farmers and its adjusters do not assess each claim individually. Instead, they say, the adjusters implement standard business practices that are designed to minimize payments to insureds and maximize profits to the insurer. For these extra-contractual claims the plaintiffs seek punitive damages and other relief, including discovery far beyond the individual facts in each case.[3]

*Lloyds Hurricane Ike Litig., supra*, 392 S.W.3d at 355 n. 3. A typical allegation says:
   Plaintiff's experience is not an isolated case. The acts and omissions of the Defendant in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant with regard to handling these types of claims. Defendant's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholder.
   This is stated as a foundation for extra-contractual relief, including treble and punitive damages. It is a basis for seeking discovery of documents from years past, across the entire state. The discovery concerns such things as training and education, communications from government agencies, other lawsuits, demand letters from other policyholders, etc.
   Whether, and under what circumstances, the conduct alleged as standard business practices is actionable (or admissible at trial) is not for us to decide. *Cf. In re National Lloyds Ins. Co.*, 449 S.W.3d 486, 489 (Tex. 2014) (stating the plaintiff "has proposed to compare National Lloyds' evaluation of the damage to her home with National Lloyds' evaluation of the damage to other homes to support her contention that her claims were undervalued. But we fail to see now National Lloyds' overpayment, underpayment, or proper payment of the claims of unrelated third parties is probative of its conduct with respect to [plaintiff's] undervaluation claims at issue in this case.").

Farmers asks that we create one pretrial court to handle all the cases. In the alternative it asks for pretrial courts in five different areas around the state.

All plaintiffs oppose the motion. (1) They argue first that the cases are not "related," and therefore should not be transferred, because they arose from many different storms that occurred at different times in different counties. (2) Second, they argue that to grant this motion would give Farmers a "perpetual MDL" because Farmers could use the tag-along procedure to bring newly-filed cases into the pretrial court, potentially forever. (3) They also argue that any convenience for Farmers would be outweighed by the inconvenience to the plaintiffs, who would have to travel to a court far away from the counties of venue, where the property is located.

For the reasons stated below, we grant Farmers' alternative request in part and create three MDL courts for these cases.[4]

4. By separate order we have today created three pretrial MDL courts for the major storms mentioned in footnote two above and all the other minor storms in the same time frame (Feb. 29, 2012 to June 11, 2014). The order appointing pretrial judges: (1) expressly excludes several cases in which we have concluded there is no allegation of wrongful business practices; (2) allows lawyers to point out on rehearing that their cases are in the same category and should also remain outside the MDL court; and (3) observes that if the proceedings in the remanded cases interfere with the MDL pretrial court process (through discovery conduct and rulings, trial settings, or otherwise), Farmers may seek to remove them to a pretrial court through the tag-along procedure.

5. If a given issue is being decided *consistently* by judges across the state, one might ask what is gained by litigating that issue repeatedly. On the other hand, if an issue is being decided *differently* by different judges, one might ask why the legal system is letting that happen. "Like cases should be treated alike" is a universally accepted principle of justice.

### I. CONVENIENCE, EFFICIENCY, AND JUSTICE.

"Rule 13 aims to further the goals of convenience, efficiency, and justice by (1) eliminating duplicative and repetitive discovery, (2) minimizing conflicting demands on witnesses, (3) preventing inconsistent decisions on common issues, (4) reducing unnecessary travel, and (5) creating judicial efficiency through the use of a single judge." *See In re State Farm Lloyds Hidalgo County Hail Storm Litig.*, 434 S.W.3d 350, 355 (Tex. M.D.L. Panel 2014).

▮▮▮ Whether it would serve the interests of convenience, efficiency, and justice to transfer the pretrial phase of 1565 cases (pending in 166 courts in forty-four counties) is not a difficult question. In the matter before us, transfer would further each of these goals. We have not been given any reason why it would be sensible judicial policy for dozens of trial judges to adjudicate the same issues again and again;[5] or for the same witnesses to be

It is true that, over a period of time, inconsistent and contradictory *legal* rulings might be reviewed and harmonized by the appellate courts. But *discretionary* rulings would seldom be changed by appeal or mandamus because judges are generally permitted to exercise their discretion differently.

We have previously stressed the importance of achieving consistent rulings on common issues. *See, e.g., In re State Farm Lloyds Hurricane Ike Litig., supra*, 392 S.W.3d at 358 ("The pretrial judge will, of course, deal with general discovery issues common to the majority of cases. Common issues will be given uniform judicial treatment and will be decided consistently."); *In re Silica Prods. Liab. Litig.*, 166 S.W.3d 3, 6 (Tex. M.D.L. Panel 2004) ("One virtue of transferring related cases to a single pretrial judge is that issues, once raised, will be decided the same way in the future.... As contested issues arise, the pretrial judge will make consistent rulings, which can then be reviewed by the appellate courts as appropriate. This, we think, serves Rule 13's goal that our system give related cases consistent and efficient treatment.").

deposed (or the same documents produced) repeatedly; or for the same lawyers to face conflicting trial settings. And the fifth goal—allocating finite judicial resources intelligently—seems especially compelling, for reasons that we have explained before.[6]

## II. RELATEDNESS.

A more difficult question is whether these cases are related within the meaning of prior MDL decisions. "Relatedness is a threshold question. If cases are not related we lack authority to assign them to an MDL pretrial judge, even if such an assignment would serve the interests of convenience and efficiency." *See In re*

*Deepwater Horizon Incident Litig.*, 387 S.W.3d 127, 128 (Tex. M.D.L. Panel 2011).

The issue of MDL relatedness in weather-damage insurance lawsuits has been fought repeatedly in MDL filings. This history of continuous and strenuous disagreement suggests that we should take a fresh look at our weather-damage cases and clarify the rules for better guidance in future cases.[7]

Our first weather-damage MDL motion arose from Hurricane Rita. It involved twenty-two cases against several insurers. In *In re Delta Lloyds Ins. Co.*, 339 S.W.3d 384 (Tex. M.D.L. Panel 2008), a majority of the panel held that even though all twenty-two cases arose from one violent storm, they were not related to each other

---

**6.** In *In re State Farm Lloyds Hurricane Ike Litig, supra,* we said:

> A fifth objective of the MDL process is to allocate finite judicial resources intelligently by minimizing the occasions when different judges decide the same or similar issues again and again. When one trial judge has decided an issue that is common to a set of related cases, the legal system cannot afford to let other trial judges spend time deciding the issue again. Time and energy are finite quantities, and when a judge spends docket time and effort on $A$ and $B$ there will be less time and energy remaining for $X$ and $Y$. Rule 13's concern for efficiency rests on the belief that unnecessary relitigation of issues, which can deprive other litigants of their fair share of courtroom time, is an extravagance that the legal system cannot afford. "To the extent that the pretrial judge's workload does increase, that would seem to be more than offset by the decreased workload the other [ ] judges will collectively enjoy."

392 S.W.3d at 356 (citing *In re Silica Prods. Liab. Litig., supra,* 166 S.W.3d at 8). In the present matter, the three pretrial judges' workloads will indeed increase. But the judicial system will enjoy an enormous net gain from the decreased workload of the other 160+ judges in forty-four counties, which will increase the judicial time available for the other deserving litigants in their courts.

**7.** Members of this panel have issued strong and thoughtful separate opinions that ques

tion whether the existing rules are workable. In *In re National Lloyds Ins. Co. Hurricane Litig.*, 422 S.W.3d 926 (Tex. M.D.L. Panel 2013), Justice Jeff Brown observed that "the real common element" in the weather-damage cases is not that "each one arises out of hurricane-inflicted damages, but that in each case the plaintiffs are alleging the same behavior by the insurer." But, he said, a "business practices" MDL pretrial court with no other limitation would be "impractical and unworkable"—it might become a perpetual pretrial court, "with new cases added from every corner of the state every time a new storm hits." *See id.* at 932 (Jeff Brown, J., concurring).

Justice Harvey Brown has suggested that the panel's relatedness inquiry should focus "less on the geographic and temporal proximity of the storms themselves and more on the insurer's claims-handling procedures implicated in the lawsuits." For example, if the plaintiffs allege (and seek discovery concerning) a longstanding claims settlement practice, that would suggest relatedness over a long period of time. Similarly, to assert that claims handling processes span a large geographic area would suggest a corresponding large area of geographic proximity. *See In re National Lloyds Ins. Co. Hail Litig.*, 434 S.W.3d 345, 348–50 (Tex. M.D.L. Panel 2014) (Harvey Brown, J., concurring).

by that common event because Rule 13 defines "related" as involving "one or more common questions of fact"—and Hurricane Rita was a common "undisputed fact," not a common "question of fact." *Id.* at 387. Nevertheless, the panel held that sixteen of the cases were related because two insurers (Delta and Southeast) faced multiple extra-contractual claims. The "business practices" allegations against Delta in its four cases made those cases related to each other. And the "business practices" allegations against Southeast in its twelve cases made those cases related to each other.[8] But as to the remaining six cases against five other insurers a majority of the panel denied the MDL motion, reasoning that the cases were not related because each insurer was defending only one claim, and therefore the claims against those five insurers were not related to any other case.[9] Later, in *In re Standard Guaranty Ins. Co.*, 339 S.W.3d 398 (Tex. M.D.L. Panel 2009), the panel granted an MDL motion for roughly a dozen Hurricane Rita cases against one insurer that faced the common extra-contractual claims.

The next weather-damage MDL motion involved forty-two cases arising from two different hurricanes, Rita and Humberto. In *In re Texas Windstorm Ins. Ass'n Hurricanes Rita and Humberto Litig.*, 339 S.W.3d 401, 403 (Tex. M.D.L. Panel 2009), we followed *Delta* and held the cases were related "because each case arises from hurricane damage, involves the same insurance coverage, and involves the same or similar extra-contractual claims and discovery."

In a Hurricane Ike proceeding three years later, we followed *Delta* and *Texas Windstorm* and disposed of the relatedness issue in this short passage:

> These [sixty-six] cases are related because they arise from one event and the plaintiffs seek common discovery on the ground that State Farm has a "general business practice" of adjusting claims in a way that is unfairly designed to tilt the process in its favor and against the policyholder. Plaintiffs seek discovery tailored to each specific case and also discovery delving into State Farm's broader practices in property insurance cases generally. For the reasons stated in [*Texas Windstorm* and *Delta*], which need not be repeated here, the cases are related for purposes of Rule 13.

*See In re State Farm Lloyds Hurricane Ike Litig.*, *supra*, 392 S.W.3d at 354–55. We established an MDL court for the sixty-six hurricane cases. A few months later, State Farm sought to add an ordinary windstorm case to the Hurricane Ike pretrial court. In *In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d 130 (Tex. M.D.L. Panel 2012), we allowed a 2010 *windstorm* case The same allegations have been made against the insurer in every weather-damage case cited in this opinion. to be added by the tag-along procedure[10]

---

8. The first MDL motion that emphasized the discovery implications of a "standard business practices" allegation was *In re OCWEN Loan Servicing, LLC.*, 286 S.W.3d 669 (Tex. M.D.L. Panel 2007), a commercial case. The same allegations have been made against the insurer in every weather-damage case cited in this opinion.

9. The majority said that the five insurers facing six cases "have not established that the claims against them are based on standard practices and procedures common to [each insurer] or that the claims arise from the same standardized policy language." 339 S.W.3d at 389. It is not clear from the opinion which insurer was defending a second lawsuit.

10. Rule 13.5(e)'s tag-along procedure is discussed in *In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d 581 (Tex. M.D.L. Panel 2014).

to the MDL court involving the 2008 *hurricane,* essentially because the same generic "business practices" discovery was sought in both.

We next applied this evolving series of decisions in *In re National Lloyds Ins. Co. Hurricane Litig.,* 422 S.W.3d 926 (Tex. M.D.L. Panel 2012). There we held that *hailstorm* cases were not related to *hurricane* cases against the same insurer, even though the same business practices were alleged to be used in both kinds of claims. In *National Lloyds* there were already two existing pretrial courts—one involving National Lloyds' hurricane cases and the other involving hailstorm cases against several other insurers. We sent the cases to the hailstorm MDL court and denied National Lloyds' request to put the hailstorm cases in its hurricane MDL court.

By this time, it was becoming clear that business practices allegations were the main point of contention in these cases. All requests for MDL treatment in weather-damage cases before and since have involved assertions by the plaintiffs that the insurers follow standard business practices designed to minimize payouts instead of concentrating on the individual claims.

When litigants broaden their claims to make business practices allegations and to seek discovery beyond the facts surrounding the individual policyholder's loss—when they allege that a uniform set of

practices is occurring in all their cases, for which they seek uniform extra-contractual discovery and relief—these generic claims transcend the individual claims and make the cases related to each other. The allegation itself is an implicit concession that the cases are related.

These allegations have been the primary reason why we have set up pretrial courts. Yet we second lawsuit have been reluctant to hold that a "business practices" allegation, without some other kind of linkage, justifies MDL. Concerns have been expressed that we might set up an insurer-based MDL court that includes vastly different kinds of claims arising at different times and places. Would one insurance company be entitled to have its own MDL court for many different kinds of cases, or for new property damage claims into the foreseeable future?[11] With concerns like these in mind, we have tried to fashion prudential limits on the right to obtain an MDL pretrial court.[12]

In *In re National Lloyds Ins. Co. Hurricane Litig.,* 422 S.W.3d 926, 930 (Tex. M.D.L. Panel 2013), we suggested a "close proximity" limit: "Cases are related where one or more significant weather events occurring in close proximity form the framework of the litigation, and the litigation involves allegations of similar standard business practices." We repeated the "close proximity" requirement in *In re*

---

11. One brief argues that Farmers "wishes to have all cases ever brought against it or its related entities which allege mishandling of property damage insurance claims arising from wind/hail storms, regardless of the underlying facts, underlying event, date, or location, transferred to an insurer-specific MDL Court." Another says, "If its request is granted, Farmers will have succeeded in obtaining its own court system for all wind and hail claims throughout Texas, which will live on in perpetuity." These concerns are unfounded, for the reasons stated in Section III below.

12. We have rejected that kind of request (i.e. for a potentially unending MDL court) in a non-insurance case. In *In re Personal Injury Litigation Against Great Lakes Dredge & Dock Co., LLC,* 283 S.W.3d 547 (Tex. M.D.L. Panel 2007), we denied a request for a defendant-specific MDL court. There the defendant sought an MDL court for twenty maritime personal injury cases that arose at different times. Several injuries had occurred on the same vessel. Many of them involved the same experts. All involved the same maritime statutes.

*State Farm Lloyds Hidalgo Cty. Hail Storm Litig.*, 434 S.W.3d 350, 353 (Tex. M.D.L. Panel 2014):

> For first-party insurance claims arising out of common significant weather events against a common insurer-defendant, a party advocating use of an MDL must show more than the existence of the undisputed weather events. Instead we require a party to show two common fact questions: (1) an allegation that the insurer handled claims in accordance with standard business practices and (2) the significant weather events occurred in "close proximity."

The latest weather-damage decision denied an MDL motion for twenty-six cases that arose over a four-year span in seven counties. *See In re National Lloyds Ins. Co. Hail Litig.*, 434 S.W.3d 345 (Tex. M.D.L. Panel 2014). Even when the cases were sorted into three geographical groups, most of them spanned three years.

We acknowledge that these decisions have not given clear guidance to litigants. Future decisions must bring more clarity to this area of the law, even if this requires us to recognize that some of the decisions perhaps made a wrong turn. But that task will wait for another case. In the motion before us, the "close proximity" analysis is adequate because the 1565 cases overwhelmingly consist of several discrete storms that occurred within a little more than two years. When we focus on the eight groups of cases, we conclude that each of them justifies an MDL court. Each case in the eight major groups listed in footnote two above is related to the other cases in that group. Each storm occurred in contiguous counties over the same time period, and the same business practices allegation is made. And it will serve the goals of convenience, efficiency, and justice for a pretrial court to handle the cases in each group, for the reasons explained in Section I above. An MDL court is proper for the eight storms, considered individually; and to bring the other cases into the eight-group MDL will bring efficiencies and remove the potential for conflicting rulings in all the cases. In these circumstances there is no reason why the law must require that *all* the cases against Farmers, *considered as a whole*, arose in "close proximity."

It bears repeating that the kinds of damage, the policy language, and the extra-contractual allegations are much the same in each of these cases. The business practices alleged against Farmers are said to be actionable. They are asserted as a foundation for voluminous discovery and for causes of action that each plaintiff will seek to have submitted to a jury as a basis for treble and/or punitive damages. The number of claims is enormous. *Each* of the eight storms listed in footnote two *by itself* involves more MDL lawsuits than the sixteen that were transferred to an MDL court in *Delta*.

An MDL court will serve the purposes of the statute: It will protect against multiple and conflicting demands on witnesses; prevent multiple and conflicting discovery orders, legal rulings, and trial and pretrial settings; and conserve judicial time.[13]

---

13. In addition, as we have said before, we cannot close our eyes to a litigation reality that exists whenever similar cases are pending in different courts and the plaintiffs are seeking generic "business practices" discovery—discovery beyond the case-specific issues, such as coverage, causation of damage, cost of repairs, etc. There is a powerful incentive for law firms seeking the generic discovery to present a discovery request first to the judges they think are most likely to grant it. If they obtain less than they wanted, they can try again before different judges to obtain what the earlier judges denied (or granted only in part). When "the issues are expanded to a defendant's business practices generally,

## III. OTHER ISSUES.

We now consider three other concerns that have been expressed by some plaintiffs.

**Perpetual MDL court.** It is said that to grant this motion would give Farmers a "perpetual MDL" because as new storms occur and new cases are filed, Farmers could use the tag-along procedure to bring them into the pretrial court—potentially forever. This will not happen because the tag-along procedure will apply only to new cases arising from storms already in the MDL. The matter before us is a collection of individual storms. The tag-along procedure will not cover cases arising from new storms occurring after June 11, 2014.[14]

**Inconvenience.** An additional concern is that it will be inconvenient for plaintiffs to attend hearings in a distant court, and that this inconvenience outweighs any convenience to Farmers. This argument appears to rest on the assumption that parties often attend pretrial hearings. We respectfully disagree with this implicit assumption. There is nothing in the record to contradict our understanding, based on ex-

perience, that it is rare for *parties* to attend discovery and other pretrial hearings. It is also our experience that pretrial evidentiary hearings requiring party testimony are rare. Concerning attendance by *lawyers*, we are confident that when it is expensive or difficult for them to attend hearings in a faraway county the pretrial court will fairly consider requests to attend by telephone or other electronic methods.[15]

■ **Venue.** A related argument is that MDL removes cases from the county of venue. This is only partially true. When an MDL motion is granted, only the pretrial decisions are heard by the pretrial judge; when cases are ready for trial they will be remanded to the original county of venue for trial on the merits.[16] It is true that the pretrial court will hear pretrial matters and the original trial courts will not. But this is a decision that the Legislature made when it enacted the MDL procedure and superimposed it onto the existing Texas civil litigation system, including all the statutory and rule-based venue provisions.[17]

---

over a period of years, there are likely to be repeated efforts to seek broader discovery rulings from other courts. This is true because if a second court grants discovery that the first court denied, the documents are, in practical effect, produced for all cases." *State Farm Lloyds Hurricane Ike, supra,* 392 S.W.3d at 357.

14. In the event that new cases outside the MDL seek business practices discovery, or threaten to interfere with the work of any pretrial court, a new MDL motion would be required unless the parties agree that the new cases can be tagged into the MDL court.

15. *See In re Digitek Litig.,* 387 S.W.3d 115, 117 (Tex. M.D.L. Panel 2009) ("While parties and witnesses seldom need to attend pretrial hearings in person, for some of the lawyers it will be inconvenient to represent their clients face to face before a pretrial judge from a remote county. We are confident, however,

that lawyers whose offices are far removed from the pretrial court will be able to participate, upon request, by telephone and other electronic means."). The record shows that many lawyers, though not all, are already handling cases far removed from their home counties.

16. *See In re Texas Windstorm Ins. Ass'n Hurricanes Rita and Humberto Litig.,* 339 S.W.3d 401, 404–405 (Tex. M.D.L. Panel 2009) (discussing pretrial court's duty, when remanding cases for trial, to consult with trial judge about trial settings and to specify other conditions of remand, taking into account the convenience of parties and witnesses in the remanded case and the efficient handling of the cases remaining in the MDL court).

17. *See State Farm Hurricane Ike Litig., supra,* 392 S.W.3d at 359 (noting that the MDL procedures are now a part of the Texas legal

For the reasons stated, Farmers' request for one statewide MDL pretrial court is denied. Its alternative request for several pretrial courts is granted in part. By separate order, we have established three pretrial courts for the case-specific issues. The judges will decide the common pretrial issues as a panel.

Chief Justice McClure and Justices Lang–Miers, Brown, and Puryear Concur.

system based on the Texas Legislature's mandate in 2003).