## IN RE FARMERS INSURANCE COMPANY WIND/HAIL STORM LITIGATION 2

### No. 16–0142

Texas Judicial Panel on Multidistrict Litigation.

Opinion Delivered: August 30, 2016

ON REVIEW BY THE MULTIDIS-
TRICT LITIGATION PANEL

**OPINION**

Presiding Judge Peeples delivered the opinion of the MDL Panel.

Earlier this year Farmers Insurance Company asked for an MDL pretrial court to handle wind and hail claims that arose from June 12, 2014 through January 8, 2016. When Farmers' Motion to Transfer was filed, it covered 186 cases pending before 76 courts in 27 counties. The numbers have fluctuated with the passage of time, as new cases were filed and older cases settled. A pretrial court was established by orders issued in April and June, with an opinion to follow.

■ This is the tenth MDL motion since 2008 involving insurance claims for weather damage.[1] All involve the same recurring legal issue. The issue is whether insurance claims for property damage caused by storms in different counties on different dates are "related" for MDL purposes[2] when the plaintiffs plead that the insurer, in each individual case, follows standard or general business practices. These business practices are said to be unlawful and to justify extra-contractual discovery and damages. "Relatedness is a threshold question. If cases are not related we lack authority to assign them to an MDL pretrial judge, even if such an assignment would serve the interests of convenience and efficiency." *See In re Deepwater Horizon Incident Litig.*, 387 S.W.3d 127, 128 (Tex. M.D.L. Panel 2011). We noted in *Farmers (2015)* that the issue has been "fought repeatedly" and has produced a "history of continuous and strenuous disagreement." 481 S.W.3d at 426. Because this Panel's case law of relatedness has not

---

**1.** The nine earlier cases are: *In re Farmers Ins. Co. Wind/Hail Storm Litig.*, 481 S.W.3d 422 (Tex. M.D.L. Panel 2015) [hereafter *"Farmers (2015)"*]; *In re State Farm Lloyds Hidalgo Cty. Hail Storm Litig.*, 434 S.W.3d 350 (Tex. M.D.L. Panel 2014); *In re National Lloyds Ins. Co. Hail Litig.*, 434 S.W.3d 345 (Tex. M.D.L. Panel 2014); *In re National Lloyds Ins. Co. Hurricane Litig,* 422 S.W.3d 926 (Tex. M.D.L. Panel 2013); *In re State Farm Lloyds Hurricane Ike Litig.*, 392 S.W.3d 353 (Tex. M.D.L. Panel 2012); *In re State Farm Lloyds Hurricane Litig.*, 387 S.W.3d 130 (Tex. M.D.L. Panel 2012); *In re Texas Windstorm Ins. Ass'n Hurricanes Rita and Humberto Litig.*, 339 S.W.3d 401 (Tex. M.D.L. Panel 2009); *In re Standard Guaranty Ins. Co.*, 339 S.W.3d 398 (Tex. M.D.L. Panel 2009); *In re Delta Lloyds Ins. Co.*, 339 S.W.3d 384 (Tex. M.D.L. Panel 2008).

**2.** Under Rule 13.2(f) cases are related if they "involve one or more common issues of fact."

provided clear guidance, we conclude that it should be reexamined.[3]

This MDL Panel may transfer cases to a pretrial court if they are related and transfer will further the goals of convenience, efficiency, and justice.[4] Rule 13 aims to further these goals by (1) eliminating duplicative and repetitive discovery, (2) minimizing conflicting demands on witnesses, (3) preventing inconsistent decisions on common issues, (4) reducing unnecessary travel, and (5) allocating finite judicial resources intelligently. In these storm-damage cases involving essentially the same allegations, transfer clearly serves these goals.[5]

Whether the cases are related is a more difficult issue. It is difficult largely because of our concern that to gather cases from different storms into one pretrial court simply because they involve allegations of unlawful business practices might result in a perpetual pretrial court. This might happen as new storms periodically cause damage and produce new lawsuits that could be added to the pretrial court through the tag-along procedure.[6] If allegations of business practices are all that it takes for cases to be related, the pretrial court might last for a long time.

With this concern in mind, in 2013 we announced a "close proximity" limit: "Cases are related where one or more significant weather events occurring in close proximity form the framework of the litigation, and the litigation involves allegations of similar standard business practices." *In re National Lloyds Ins. Co. Hurricane Litig.*, 422 S.W.3d at 930. This statement meant that cases would be relat-

---

**3.** As we said last year, "We acknowledge that these decisions have not given clear guidance to litigants. Future decisions must bring more clarity to this area of the law, even if this requires us to recognize that some of the decisions perhaps made a wrong turn." *Farmers (2015)*, 481 S.W.3d at 429.

**4.** We may transfer related cases from different trial courts to a pretrial court if transfer will (1) serve the convenience of the parties and witnesses and (2) promote the just and efficient conduct of the litigation. *See In re State Farm Lloyds Hurricane Ike Litig.*, 392 S.W.3d at 354. To justify transfer, "there must be two distinct findings: that the cases are related *and* that placing them into one pretrial court will serve the interests of convenience and efficiency." *See In re Wellington Ins. Co. Hailstorm Litig.*, 427 S.W.3d 581, 584 (Tex. M.D.L. Panel 2014) (emphasis in original). A pretrial court decides the pretrial issues (and approves settlements) but then remands cases for trial in the original counties of venue.

**5.** What we said in *Farmers (2015)* is true in the present case: "We have not been given any reason why it would be sensible judicial policy for dozens of trial judges to adjudicate the same issues again and again; or for the same witnesses to be deposed (or the same documents produced) repeatedly; or for the same lawyers to face conflicting trial settings. And the fifth goal—allocating finite judicial resources intelligently—seems especially compelling ...." 481 S.W.3d at 425–26. And again: "An MDL court will serve the purposes of the statute: It will protect against multiple and conflicting demands on witnesses; prevent multiple and conflicting discovery orders, legal rulings, and trial and pretrial settings; and conserve judicial time." *Id.* at 429.

**6.** *In re Wellington Ins. Co.*, 427 S.W.3d at 582, summarized the tag-along procedure:

Administrative Rule 13 lets litigants add cases to an existing MDL pretrial proceeding without filing a new motion for transfer. Rule 13.5(e) creates a tag-along procedure by which cases related to those already pending in an MDL pretrial court (but not subject to the initial MDL order) can be designated as tag-along cases. Once designated, tag-along cases are in the MDL proceeding unless the pretrial court grants a timely motion to remand them to the original trial courts. Any party dissatisfied with the pretrial court's remand decision may file a motion for rehearing of that decision with the MDL Panel.

ed only when two elements were present: an allegation of standard business practices *and* weather events that occurred in close proximity.[7]

For the reasons stated below, we have concluded that the "close proximity" limit is not properly part of the relatedness inquiry, and that concerns about pretrial courts lasting indefinitely should be addressed through the tag-along procedure.

In these storm-damage cases the plaintiffs allege that the insurer follows unlawful business practices routinely, in all cases. A typical, standard pleading says the plaintiff's experience "is not an isolated case" and the insurer's actions "occur with such frequency that they constitute a general business practice."[8] This amounts to an assertion that the cases are linked by common fact questions (the existence of the practices, and requests for extensive extra-contractual discovery and relief). This is the very definition of "related." As we said in *Farmers (2015)*:

> When litigants broaden their claims to make business practices allegations and to seek discovery beyond the facts surrounding the individual policyholder's loss—when they allege that a uniform set of practices is occurring in all their cases, for which they seek uniform extra-contractual discovery and relief— these generic claims transcend the individual claims and make the cases related to each other. *The allegation itself is an implicit concession that the cases are related.*

481 S.W.3d at 428 (emphasis added). This is true even though there may be other important issues in the cases, such as coverage, causation, and the cost of repairs. When a group of cases have one or more significant common fact questions, that makes them related even if there will also be fact questions individual to each case.

The main argument against MDL motions in weather-damage cases has been that a business practices MDL court might never end, as later cases are continually tagged in. The argument is that an insurer should not be entitled to a perpetual pretrial court that includes all future business practices cases. But when a standard assertion of fact (standard business practices) is pleaded against an insurer in storm after storm, that allegation places a common issue into all the cases and makes them related.

A different question is whether a long-lasting pretrial court would further the goals of convenience, efficiency, and justice. This is a question for the pretrial court. When later cases arise after the June 12, 2014 to January 8, 2016 period and are tagged into the pretrial court, upon request that court will consider whether the stated MDL goals will be served.

All this leads to two conclusions. First, insurance claims involving weather damage on different dates in different counties are related when the plaintiffs allege that the insurer follows standard or common business practices that are said to be unlawful and to justify extra-contractual discovery and relief. Such an allegation,

---

7. "[W]e require a party to show two common fact questions: (1) an allegation that the insurer handled claims in accordance with standard business practices and (2) the significant weather events occurred in 'close proximity.'" *In re State Farm Lloyds Hidalgo Cty. Hail Storm Litig.*, 434 S.W.3d at 353.

8. The typical business practices allegations are summarized more fully in *Farmers (2015)*, 481 S.W.3d at 424 n.3; and *In re State Farm Lloyds Hurricane Ike Litig*, 392 S.W.3d at 355 n.3.

without more, establishes that the cases are related. Second, the concern about pretrial courts becoming perpetual is a prudential concern, not an ingredient of relatedness.

■ The possibility of a never-ending pretrial "business practices" court should not prevent the creation of a pretrial court in the first instance. The possibility should not be considered prematurely, before it has ripened into a real prospect. Instead, as time passes this concern should be presented to the pretrial court through the tag-along procedure. If and when a pretrial court threatens to become perpetual because the same claim is asserted perpetually, that issue may be raised when cases are tagged into the court. If a defendant faces allegations that prove to be repetitive and perhaps perpetual, it may well be entitled to have those related and recurring assertions handled consistently by one pretrial court instead of several. The pretrial court will be familiar with the business practices issues; it will be able to assess them in the light of its experience. If motions to remand are filed, that court may then assess whether the later cases threaten to make the pretrial court never-ending, and whether to continue adding cases to the pretrial court will serve the goals of convenience, efficiency, and justice. The pretrial court will hear argument and decide the issue—based on facts and not on predictions and possibilities. Upon proper request, the pretrial court's decisions will be subject to review by this panel.

Chief Justice McClure, and Justices Lang–Miers, Brown, and Puryear Concur.